**Ambrose F. DRAFTS, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. AC–1536.**

United States District Court
E. D. South Carolina,
Columbia Division.

April 21, 1965.

Donald D. Aaron, of Law, Kirkland, Aaron & Alley, Columbia, S. C., for plaintiff.

Terrell L. Glenn, U. S. Atty., Columbia, S. C., and Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., for defendant.

HEMPHILL, District Judge.

 Action by plaintiff to set aside a final decision by the Secretary of Health, Education and Welfare that he was not "disabled" within the meaning of the Social Security Act. Judicial review is limited to a determination of whether or not the Secretary's decision is supported by "substantial evidence." If it is so supported, it must be affirmed; however, if undue reliance has been placed upon one portion of the record to the disregard of overwhelming evidence to the contrary, then the Secretary's decision must be reversed. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964). Naturally, the Secretary has the duty to weigh all the evidence, medical and non-medical, and must resolve conflicts in his testimony. But his resolution, his interpretation, must be reasonable. See Jarrett v. Celebrezze, 233 F.Supp. 282, 285 (W.D.S.C.1964).

Plaintiff was born in 1906 and went as far as the ninth grade of public school. He also attended a business college for 9 or 10 months and completed a course in bookkeeping.

As the Hearing Examiner noted:

"In explaining his work history, the claimant stated that he had worked as a filling station attendant in 1925 and 1926, and then had farmed on his father's land for about three years raising truck crops and cotton. He stated that no mechanical equipment was used and described the farm as a two-horse farm. In 1928 and 1929, the claimant was employed as a carpenter's helper and blacksmith's helper by the construction company erecting Lake Murray Dam, a few miles from Columbia, South Carolina. In 1930, the claimant became a sawmill worker and along with the various duties required of him also drove a lumber truck. The claimant stated that he did this work for about four or five years and then returned to farming with his father from 1936 to 1940. He stated that no farm machinery was used and that two of the main crops, wheat and oats, were harvested with a cradle. In December 1940, the claimant became employed by the Palmetto Quarry, south of Columbia, South Carolina, where he started to work as a truck driver and continued at this work for about one year. Thereafter, he did blacksmith work, such as sharpening drills, and did this work for eight or ten years, and then became a mechanic's helper for about three years, taking care of the belt lines, crushers, and reducers used at the the quarry. Thereafter, he became the loading engineer at the plant, with direct supervision over twelve employees, who loaded railroad cars and trucks from the bins of the quarry. The claimant explained that this was not merely supervisory work and that he frequently had to work right along in the strenuous job of

moving cars about and filling the car from the bins in which the sized and cleaned gravel was stored."

The substance of plaintiff's complaint as to why he is disabled is reflected in the June 2, 1963 report of Dr. L. J. Brannon, which reflected that the destructive body of the vertebra threw the claimant's neck out of alignment, causing *severe pain* and that he felt that the process was taking place over the claimant's entire body, rendering him unable to work. An additional report from Dr. Brannon stated that the claimant was not able to work and was totally disabled. A still later report from Dr. Brannon stated that the claimant became disabled in February of 1963, because of osteoarthritis of the joints, particularly the spinal column. This report also stated that due to the far advancing osteoarthritis of the cervical vertebrae and also the entire spine, the claimant was completely disabled from performing his work. This report was substantiated by X-rays showing this condition.

The report of Dr. Charles H. Epting stated that the claimant was unable to bend forward because of existing paravertebral muscle spasm and that, as a matter of fact, the claimant had almost a rigid spine and, therefore, range of motion was limited in all directions. In the lying position, it was noted that there was a difference in the leg length, the right being ⅜ of an inch longer than the left. Straight leg raising was tolerated poorly and limited and joint motion was limited and this was noted in the joints of his lower extremities as well as those of the upper extremities. This report also stated that X-rays at the Columbia Hospital showed extensive osteoarthritic changes and it was his opinion that the claimant had a generalized osteoarthritic condition which will progress with age and on the basis of clinical findings and X-rays, the claimant was totally disabled for manual work.

It is recognized that the Hearing Examiner is not "bound" by the doctor's "conclusion", Hanes v. Celebrezze, 337 F.2d 209 (4th Cir. 1964), but the "order"

of the doctor to his patient that he is not to work should be given weight when reviewing the "record as a whole."

Excerpts from the record as set out below aid in achieving an understanding of the claimant and his dilemma.

"I could type pretty good at the time, but now I couldn't type. My fingers has got stiff on me now. I can't do nothing with my fingers."

\* \* \* \* \* \*

"Q. Tell me about stopping work, why did you stop working?

"A. I got to where I could not make it. My neck would give me so much trouble I could not do it, it was paining me so.

\* \* \* \* \* \*

"Q. Can you move your neck all right?

"A. I can move it a little, but I can't move it much. I can't stand to look up at all, to raise it to amount to anything, or down.

"Q. Can you turn it from side to side?

"A. I can turn it about like that, that is as far as I can turn it. My neck if I set up long it starts to giving out. I get in traction a couple times a day, a couple of hours a day, I got a chair I can lean back and rest my back, I can sit up pretty good like that, for an hour or two. My neck bothers me a whole lot now, since I come here just sitting up. If I can brace my head and neck back it helps it.

\* \* \* \* \* \*

"A. Yes (my hips) \* \* \* don't hurt as much or as often as much as my spine, shoulders and fingers. When I wake up in the morning my fingers are so stiff I can hardly move them.

"Q. What about your fingers?

"A. They ache a good bit.

"Q. Can you move them?

"A. I can move them but they are stiff.

"Q. Can you straighten them out?

"A. I can straighten them out.

"Q. Can you make a fist?

"A. I can't do much of bringing them together.

"Q. Can you touch each finger to your thumb?

"A. No sir, I can on the left, but I can't on the right. My right is worse than my left.

"Q. Your right hand is worse than your left hand you say. Now are you right or left handed?

"A. Right handed. All my right side, my right shoulder seems to be worse than my left. I do not know why, but seems like my right shoulder and my right leg gives me more trouble.

\* \* \* \* \* \*

"Q. Can you take care of your own needs, like dressing or shaving and bathing?

"A. I never get to shave before about dinner time because my hands and fingers are so stiff and it takes me a whole lot longer. I cannot shave like I used to, I still do it and will do it as long as I can."

The major thrust of the rationale of the Hearing Examiner's conclusion is that:

"it is quite clear from the medical evidence that the claimant does have arthritis of the spine and that it is accompanied by pain and discomfort. From the claimant's testimony it is also clear that he requires home therapy in the form of spinal traction. The existence of an impairment in itself is not sufficient to entitle a person to benefits under the Social Security Law. \* \* \*

"The Hearing Examiner recognizes that the nature of the claimant's impairment may possibly preclude him from doing the strenuous type of work required of him as an employee at the quarry, but this does not establish inability to engage in *any* substantial gainful activity as required by the definition of disability contained in sections 216(i) and 223 of the Act."

■ The Hearing Examiner is correct, but he has taken a very restricted view of the term "any", to the point where it appears, from reading the record as a whole that he has considered the employability of the plaintiff as "conceivable" as opposed to being "reasonable" under all the circumstances. Note Hill v. Celebrezze, 233 F.Supp. 298 (E.D. S.C.1964). The broad purposes of the Act require a liberal construction in favor of disability if same is reasonably made out. Bagwell v. Celebrezze, 232 F.Supp. 989 (W.D.S.C.1964). The intent is inclusion rather than exclusion. Miles v. Celebrezze, 233 F.Supp. 767, 770–771 (W.D.S.C.1964).

■ Pain was brushed aside as a subjective non-entity. Well reasoned opinions and the obvious purposes of the Act compel that great consideration be accorded to that merciless entity called "pain". The fact that some extra-ordinary individuals can bear it and perform unflinchingly does not mean that such heroics is the "standard". The criterion is not even the standard of the ordinary man or the average man; the standard is the individual claimant himself, with all his personal assets and liabilities. See the discussion of this by Judge Simons in Hill v. Celebrezze, supra, 233 F.Supp. at page 301.

■ The import, the substance, of the record leads only to the conclusion that the Secretary's decision is erroneous and must be reversed.

Accordingly, the Secretary's decision is reversed and judgment will be entered accordingly.

And it is so ordered.