**Jack FERRELL, Plaintiff,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.**

**No. 2213.**

United States District Court
S. D. West Virginia,
Huntington Division.

Nov. 2, 1966.

Glyn Dial Ellis, Logan, W. Va., for plaintiff.

Milton J. Ferguson, U. S. Atty., and George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. A decision by a hearing examiner on February 24, 1966, became the final decision of the Secretary on April 8, 1966, when the Appeals Council denied plaintiff's request for review. The final decision holds that plaintiff is not entitled to the establishment of a period of disability or disability insurance benefits under the provisions of the Act prior or subsequent to the 1965 Amendments.[1]

■ Plaintiff last met the special earnings requirements of the Social Security Act as of September 30, 1964. Under the Act, 42 U.S.C.A. § 416(i), an individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required, thus, the burden is upon the plaintiff to establish by credible evidence that he was disabled within the meaning of the Act prior to September 30, 1964, when he last met the special earnings requirements. However, this need not be carried beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

■ The standard of review in actions of this nature is found in Section 205(g) of the Social Security Act, as amended, and is as follows:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

In short, the Courts are not to try the case de novo, and if the findings of the Secretary are supported by substantial evidence, the Courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Nevertheless, it is said that this provision of the law does not contemplate that the Courts should surrender their "traditional function," but rather that they will view the record as a whole, not for the purpose of making an independent finding, but to determine whether or not the finding is supported by substantial evidence and to see to it that the Administrative Agency does not act arbitrarily or capriciously in denying just claims or allowing unworthy ones. Thomas v. Celebrezze, supra; Underwood v. Ribicoff, supra; Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). In determining the meaning of "substantial evidence," the Courts have held it to be more than a scintilla, but less than a preponderance. Thomas v. Celebrezze, supra. It is such relevant evidence as a

---

1. Section 303(a) of Public Law 89–97 (the 1965 Social Security Amendments) amends the meaning of the term "disability" as found in 42 U.S.C.A. § 423 as follows: "(I)nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *." Previously the physical or mental impairments had to " * * * be expected to result in death or to be of long-continued and indefinite duration."

Under the provisions of Section 303(f) of the law a period of disability may be established by use of this amended definition. However, benefits would only be payable beginning in September of 1965 or the seventh month in which an individual has been determined to be under a disability under the amended test, whichever is later.

reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole. Clebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). The Fourth Circuit has pointed out that if there is only a slight preponderance of the evidence on one side or the other, the Secretary's findings must be affirmed. Underwood v. Ribicoff, supra. Therefore, the immediate task of this Court is to determine whether the defendant's denial of plaintiff's claim is supported by substantial evidence.

■ In his application for benefits plaintiff alleged the onset of his disability as April 30, 1964, because of liver trouble, a deformed right hand, broken right ankle, high blood pressure, silicosis and fungus. It should be observed at the outset that, while plaintiff has not lived what would be considered an exemplary life, this is not a consideration in determining whether he meets the disability provisions of the Social Security Act.

Plaintiff was born July 2, 1921, and has an eighth grade education. He is divorced and makes his home with his mother, a sister and a brother. He has two sons who live with their mother and whom he visits frequently. He has worked in road construction as a laborer and later as a supervisor. He also performed various jobs around a coal tipple and spent four years in the navy as a fireman. For a short period prior to his military service, he operated a trimming machine in an aluminum plant. His major occupation has been as a tavern and pool hall owner. He discontinued this business in 1961 or 1962 for financial reasons.

Plaintiff has been arrested numerous times for drinking and fighting and has served time in the penitentiary. In 1959, he was twice placed in a mental institution apparently at his wife's request. The deformed hand complained of is apparently the result of his having broken it in a fight and his ankle trouble was acquired in the same manner.

The earliest indication of plaintiff's condition is found in the report of Dr. Pablo M. Pauig of the Huntington State Hospital, dated December 3, 1965, concerning his admissions there in 1959. His major trouble was described as a speech impairment and a deformity of the right hand. The diagnosis was "Sociopathic personality disturbance, alcohol addiction." He was issued a certificate of discharge on June 19, 1963.

On June 27, 1959, plaintiff was admitted to the Huntington, West Virginia Veterans Hospital suffering from an injured right ankle that had resulted from having been kicked during a fight. The right ankle showed a spiral fracture of the distal and of the fibula with no displacement of fragments. There was also a nondisplaced tear fracture of the posterior lip of the tibia and posterior tuberosity of the astragalus. It was necessary to wait until the swelling had subsided before a cast was applied. The cast was removed on August 10, 1959, and the fragments were in excellent position, however, there was demonstrable osteoporosis of the tibia and fibula. Plaintiff was given physiotherapy and allowed to begin full weight bearing. He was discharged August 12, 1959.

On June 1, 1960, plaintiff was treated at the Veterans Hospital for weak groin tissue. He also complained of pain and stiffness in his broken hand, and that his right ankle swelled and caused him pain when he stood on it.

In a report dated October 2, 1964, Dr. Harold H. Cudden, a general practicing osteopath, found plaintiff to be suffering from numerous impairments and concluded that he could not pass an examination for work. Among the symptoms listed were traumatic deformity of the right hand, chronic pain in the right ankle, edema, pains in the gall bladder and liver, fungi in the feet, hands, armpits and inguinal area, and difficulty in breathing. Among other items listed by Dr. Cudden are arthritis of the right hand and foot, cirrhosis of the liver in 1962, chronic bronchitis and limited vital respiratory capacity.

Plaintiff was also examined on October 10, 1964, by Dr. Virgil A. Deason, a gen-

eral practitioner. He was found to be suffering from a fungus infection of the fingernails, feet and groin and an old fracture of the right hand. This hand was described as somewhat weaker than the left hand, but as having some grip. It was felt that he was unable to do heavy work as a coal miner or to use his right hand.

On January 27, 1965, plaintiff was examined by the Veterans Administration for pension purposes. He was subsequently awarded benefits. The report of this examination refers to a prior examination on November 16, 1962. A copy of this report is not contained in the present record. He was described as slender and only fairly well nourished. A definite butterfly pattern of erythema involving the malar regions and the bridge of the nose was noted. The skin was described as heavily thickened and reddened with areas of atrophic skin scattered over the erythematous area. There were scattered erythematous areas on the medial surface of the right arm and wrist. The skin of the axillae and the groin were normal. There was severe destruction of all the fingernails and toenails. The cardiac thrust was good and the rhythm and rate were normal. There was no heart murmur though the peripheral vessels were mildly thickened. Plaintiff's right ankle was swollen and there was mild redness and scaling in an area below the external malleolus. The plantar flexion and dorsi flexion were very greatly limited. The skin of the right hand was described as thin and the dorsum markedly swollen. The calluses of the fracture site were tender. There was full wrist motion though the grip was weakened and there was an ulnar deviation of the hand. The final diagnosis was lupus erythematosis, discoid type, onychomycosis toenails and fingernails, residuals of injury to right ankle and right hand, arteriosclerosis and angina. There was no finding of liver disease.

The most comprehensive medical report in this record and the one upon which the Secretary properly places the most credence is that of Dr. Richard J. Stevens, dated May 18, 1965. A physical examination, numerous laboratory studies, X-rays, electrocardiogram, Master's Two Step Test, as well as pulmonary function studies were given. The conclusion was that plaintiff's story was not suggestive of angina pectoris or cardiac disease, as the cardiac and pulmonary studies were all essentially normal. There was no evidence of liver disease. There was probable discoid lupus of the nose, but no sign of disseminated lupus erythematosis. The only abnormalities were the residuals of the previous injuries to the right hand and right ankle. The only abnormal laboratory study was a sedimentation rate of 34, however, the electrophoretic pattern showed a normal gamma globulin, which was said to take away the significance of the elevated sedimentation rate. Dr. Stevens felt that no totally disabling disease could be demonstrated in plaintiff.

In a "To Whom It May Concern" letter, dated January 25, 1960, Dr. C. J. Bittmann, an osteopath, states that plaintiff is almost totally disabled to work. This was based upon the damaged right hand and leg as well as the two commitments to the mental hospital and the chronic inguinal abscess of the left side that frequently flared up, ruptured and drained. This latter condition was said to have occurred about 35 times since 1943.

Although not mentioned in the application, plaintiff also contends that the speech impediment which he has had since birth adds to his disability. While such condition might increase the difficulty in obtaining a job, it adds very little to the establishment of the medically determinable condition plaintiff has the initial burden of establishing. There is lack of credible evidence to support a finding that he suffers from a liver, heart, or pulmonary condition that alone, or in conjuncture with his other conditions, adds any significant impairment to his general condition. He has never taken medication for his alleged high blood pressure and the latest physical examination failed to disclose such a condition.

■■ It is recognized that pain unaccompanied by any objective observable symptoms which is sufficiently intense to be disabling will support a claim for benefits, Ber v. Celebrezze, 332 F.2d 293 (2nd Cir. 1964), however, plaintiff's claim of back pain is not within this rule, nor do we think it adds significantly to his overall condition. Thus, plaintiff's medically determinable impairments are his injured hand and ankle and the fungus condition. The lupus of his face, like the speech impediment, while adding to the difficulty in securing employment, is not alone or in concert disabling.

■ Both plaintiff and his wife allege that he was unable to perform his work for the State Road Commission in 1963 and 1964, and that he had actually been given this job as a favor. There is no other testimony concerning this situation and, while not inferring that this might not be the case, before assuming that a government agency practices such a policy the evidence of such should be convincing. It is particularly hard to believe that this was the circumstance in this instance in view of the medical evidence subsequent to this employment.

■ As the hearing examiner observed, the hand, ankle and fungus conditions have existed for quite some time, and there is no evidence that they have deteriorated. The fungus condition particularly seems to be an ailment that comes and goes and one with which plaintiff has lived for a number of years. After having received the ankle and hand injury, he was able to continue in the tavern business, ceasing said business for financial reasons as well as to work as a laborer and foreman for the road commission. He likewise performed these same occupations after his institutionalization in the mental hospital. Whether it was the mental condition or the drinking (one, in all probability, being the cause of the other), which necessitated these periods of confinement and treatment cannot be said, nor is it necessary to express an opinion on the question of whether chronic drinking is an illness. Suffice it to say, in spite of his long addiction to demon rum, plaintiff earned a living at various jobs and the burden was upon him to establish that he could no longer do this. The Secretary has determined that he has failed to meet this burden and this finding is not without substantial evidentiary support.

■ The fact that a claimant has been determined to be disabled by another government agency is not binding on the Secretary and in fact has been termed, in view of the different tests and purposes of the agencies, of doubtful value as a persuasive factor. Carpenter v. Flemming, 178 F.Supp. 791 (N.D.W.Va. 1959). Thus, the determination of the Veterans Administration in plaintiff's case, while significant, does not, in view of the record as a whole, require a reversal of the Secretary's decision.

■ There is no need to enter into a consideration of plaintiff's work history, educational background or age since he has failed to establish an impairment that disables him within the meaning of the Act. Bradey v. Ribicoff, 298 F.2d 855 (4th Cir. 1962). Consequently, it is not necessary to consider the question of the generally available employment for which plaintiff was fit and qualified as laid down in the cases of Ray v. Celebrezze, 340 F.2d 556 (4th Cir. 1965) and Wimmer v. Celebrezze, 355 F.2d 289 (4th Cir. 1966).

Accordingly, viewing the record as a whole, it is clear that a reasonable mind could very well have reached the same conclusion as did the Secretary—that the evidence failed to establish the claim asserted—and that being so, the defendant's Motion for Summary Judgment must be granted.