Ralph W. HASKINS, Plaintiff,

v.

Robert H. FINCH, Secretary of Health,
Education and Welfare, Defendant.

Civ. A. No. 15645–3.

United States District Court
W. D. Missouri, W. D.

Aug. 26, 1969.

Silas Woodson Longan, III, Kansas City, Mo., for plaintiff.

Calvin K. Hamilton, U. S. Atty., by John L. Kapnistos, Asst. U. S. Atty., Kansas City, Mo., for defendant.

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REVERSING JUDGMENT OF DEFENDANT

BECKER, Chief Judge.

This is an action under Section 405 (g), Title 42, U.S.C., providing for judicial review of a final decision of the Secretary of Health, Education and Welfare. The plaintiff filed an application for disability benefits under Section 423, Title 42, U.S.C., on April 27, 1964. After denial of the application by the defendant Secretary, the plaintiff sought judicial review by filing his complaint in this Court on August 17, 1965. Thereafter, on defendant's motion, the case was remanded to defendant "for the purpose of obtaining evidence which exists but has not been submitted, and, if then necessary, to arrange for additional medical examinations of plaintiff in order to obtain more evidence as to the severity of his alleged impairments."

After this remand to the defendant, the Appeals Council of the Social Security Administration remanded the case to a hearing examiner, who took additional evidence and held another hearing at which plaintiff, a medical advisor, and a vocational consultant testified. The hearing examiner then recommended that the claim be denied. This recommendation was adopted by the Appeals Council and the claim was denied by the defendant Secretary. As a result, the final decision of the Secretary held that plaintiff was not entitled to benefits under the Social Security Act before or after the 1965 amendments.

APPLICABLE STATUTES

Before the 1965 amendments, disability was defined by the Social Security Act as:

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued indefinite duration * * *."

The 1965 amendments to the Act changed the definition of disability to the following:

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *." See Sections 416 (i) (1) and 423(c) (2), Title 42, U.S.C.

THE MEDICAL EVIDENCE

In his application for Social Security benefits filed April 27, 1964, plaintiff alleged that he became unable to work on September 30, 1963, at the age of 56, because of "back troubles." The following medical evidence on that application was available and was considered by defendant in rendering his final decision:

Robert H. Dunham, M. D., reported that plaintiff consulted him in September of 1963, reporting an 18-to-20 year history of back injury and complaining of pain and limitation of motion in his back. Dr. Dunham found plaintiff to be suffering from osteoarthritis of the 3rd and 4th lumbar vertebrae with destruction of the interspace between them. He noted that plaintiff was unable to flex or extend his back completely without pain, that he suffered from muscle spasms in the lumbar region, that the condition was "static or deteriorating", that, in addition to the above "objective findings", there was an "acute exacerbation of [plaintiff's] preexisting condition." Dr. Dunham stated that plaintiff was able to engage in "Sedintary (sic) activity only."

Harry B. Overesch, Jr., M.D., an orthopedic surgeon, examined the plaintiff in March 1964 and reported a marked degenerative disc of the lumbar spine. This report was confirmed by x-rays taken by Dr. Overesch. Dr. Overesch's opinion was that the condition was static and he recommended a surgical spinal fusion. Dr. Overesch found that plain-

tiff had pain to the extent that "coughing and sneezing causes pain in the low back"; that there was limitation of all motions of the spine; and that there was some list and scoliosis of the dorsal lumbar spine. He stated that surgery might be corrective but that following surgery the claimant would have functional loss "mainly in back motion," such as bending. Dr. Overesch felt that the plaintiff should not return to his former occupation of welder and stated that he should avoid "heavy lifting and repeated stooping or bending" and that he would "carry a disability rating for moderate or heavy work."

Plaintiff was examined in February of 1966 (Tr. 264–267) by Charles E. Vilmer, M.D., whose objective findings were substantially the same as those previously made by Dr. Dunham and Dr. Overesch. Dr. Vilmer found that a gradual onset of pain felt by plaintiff began in September 1963; that the pain had persisted until the time of his examination in February 1966; that at that time the pain, according to plaintiff, extended into both legs; that plaintiff stated the pain to be constantly present, and relieved somewhat by reclining and worsened by stretching or lifting; that plaintiff was able successfully to complete a Patrick's test (sitting with legs crossed) to indicate that he did not have arthritis of the hip;[1] that the examining positions were taken by plaintiff with "considerable agility"; that there was "some straightening of the lumbar spine with some tenderness noted on deep pressure at the lumbosacral joint area"; and that motion of the lumbar spine could be carried out in a range of "about seventy-five percent of normal in forward and lateral flexion beyond which point the patient complained of pain in his low back." In addition, there was "minimal tenderness on deep pressure over the sciatic notch on each side." X-rays revealed a "considerable amount of osteoarthritic change throughout the lumbosacral area. The right side of the intervertebral disc showed marked narrowing with some spur formation at adjacent borders." Dr. Vilmer concluded:

"It is my feeling that this individuals (sic) objective findings can not be correlated with his subjective complaints. It would be my feeling that this individual can perform most activities without a lot of difficulty, if lifting, excessive stooping or use of the back would be eliminated.

"I believe that much (sic) of this individuals (sic) complaints are magnified by the fact that they are probably constantly present and by the fact that there is considerable functional overlay. Most of these complaints could be eradicated by surgical fusion L–3 L–4 L–5 and L–5 S–1 level, however I do not believe that this patient is a good surgical risk from a psychogenic standpoint and I would not consent to do so for that reason." (Tr. 266)

Dr. Vilmer deemed the strength in plaintiff's back, legs and hips to be normal.

At the request of plaintiff's attorney, plaintiff was examined in August of 1965 by William H. Duncan, M.D., a surgeon (Tr. 316). He diagnosed:

"Old, pre-existing hypertrophic changes and degenerative disc disease of the lower back with manifestations of discomforts in both lower extremities. There is an old marked disability of the right elbow and left leg."

An old fracture of the right elbow, Dr. Duncan reported, resulted in "about thirty to thirty-five percent disability at the elbow joint with marked stiffness and limitation of motion." Also, as a result of an old leg injury dating back to 1950, plaintiff had a 25% disability of the leg. Dr. Duncan noted that plaintiff had chronic stiffness and pain in those sections of his body and that his objective impairments, together with pain and functional overlay disabled him from engaging in any substantial gainful activity. Dr. Duncan further found the con-

---

1. See page 265 of the transcript of the administrative proceedings.

dition to be "permanent and continuous throughout his lifetime."

At the hearing held by defendant after the remand at defendant's request, Leonard F. Peltier, M.D., an orthopedic surgeon and professor of orthopedic surgery at the University of Kansas Medical School, evaluated the medical testimony of record. Dr. Peltier did not examine plaintiff. His diagnosis of "lumbarization of the first sacral segment" and "degenerative disc disease" was in agreement with the diagnoses of the examining doctors. Dr. Peltier recognized that plaintiff had pain, but concluded that the degenerative condition was congenital and was related to plaintiff's age. He acknowledged, however, that prolonged sitting or standing might aggravate the plaintiff's condition.

Robert H. Fitzgerald, M.D., examined plaintiff in connection with an application for unemployment insurance in the state of California and found tenderness in the left sacroiliac joint, the ability to bend forward 70 degrees and to raise the leg laterally to 70 degrees. In the prone position, plaintiff complained of pain. Dr. Fitzgerald found marked intervertebral space narrowing between the 3rd and 4th and 5th and 6th bodies with extensive hypertrophic spurring in the former and minimal spurring with slight reverse spondylolisthesis at the latter area; a straight lumbar curve superior to the 5th lumbar vertebra with list of the lumbar spine to the right above the 3rd lumbar level; and slight hypertrophic spurring of all of the lumbar vertebrae. Dr. Fitzgerald recommended conservative care.

Ralph A. Powell, D.C., submitted a report dated March 24, 1965. He noted "reoccurring lumbar and sacrolumbar pain, spasms, and immobility"; that the radiograph revealed "narrowing of the space between 4L & 5L with severe 'lipping' of the surface of the bodies. Lumbarization of the 1st segment of sacrum.

Suggestion that 4L disc may be ruptured." His diagnosis was "chronic 3L, 4L and 5L lesions" and his prognosis was that it was "possible to promote healing to the point of tolerating everything but excessive activity."

Plaintiff's history showed that he had only a seventh grade education; that he had worked as a truck driver, a farm hand, truck serviceman, dip painter, car salesman, tack welder and maintenance man.[2] His principal occupation was that of welder, an occupation he pursued until the termination of his employment on July 21, 1963. His job superintendent testified that his employment was terminated for poor production, speed and quality, and not for physical disability as such. Thereafter, plaintiff took a vocational rehabilitation course, but quit the course when he was informed that his continuance therein would result in the loss of unemployment benefits. Further, plaintiff drew $64-a-week unemployment benefits from the California State Employment Office from September 1963 to March 1964.

A vocational expert testified at the original hearing on plaintiff's application that plaintiff could work as a welding inspector, wire stripper, micrometer inspector, or coil winder, and that he could operate the various types of machines which involved work to be performed while standing or sitting near a bench and handling light objects or material (Tr. 128–130). A second vocational expert testified at the remand hearing that plaintiff could successfully work as a salesman-deliverer of light parcels, as a driver for a diaper service company, or as a custodian or maintenance man doing light dusting and cleaning work. These jobs, the expert testified, were either advertised in a local newspaper or through the state employment services. This second expert also testified that he had checked with the personnel office which advertised for a custodian and was informed that they

2. Tr. 26, 161, 162, 168, 170, 171, and 172. A more exhaustive list is given at pages 26 and 27 of the transcript of administrative proceedings, but many of them are but variants of the list given here.

did not discriminate against older men; that plaintiff could work as a solderer, bench assemblyman, taxi driver, or bottling line inspector. These latter jobs, he testified, were available locally.

Plaintiff's principal contention on this appeal is that the defendant did not consider evidence of all the plaintiff's ailments, including chiefly pain, in determining whether he could engage in "substantial gainful activity" within the terms of the Social Security Act. Therefore, plaintiff contends that he was made to sustain his claim by more than a preponderance of the evidence. Defendant argues, in his brief, citing Celebrezze v. Bolas (C.A. 8) 316 F.2d 498, that "a decision adverse to plaintiff [does not] mean that his alleged pain was overlooked."

### SCOPE OF REVIEW

■ Section 405(g), Title 42, U.S.C., provides for judicial review of the final decisions of the Secretary of Health, Education and Welfare, in the following terms:

> "The court shall have the power to enter upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary, as to any fact, if supported by substantial evidence, shall be conclusive * * *."

The decision of the defendant can be affirmed on review by this Court if the following seven standards are met:

(1) the hearing procedures were fair and lawful, Jacobson v. Folsom (S.D.N.Y.) 158 F.Supp. 281, 284;

(2) evidence was received on the material factual issues, Fenix v. Celebrezze (W.D.Mo.) 243 F.Supp. 816;

(3) the findings of fact are supported by substantial evidence, Celebrezze v. Bolas, *supra,* 316 F.2d at 500–501;

(4) the findings of fact are sufficient to resolve the crucial issues, Hayes v. Celebrezze (C.A. 5) 311 F.2d 648, 654;

(5) the correct legal standards were applied in determining the ultimate issues, Ferran v. Flemming (C.A. 5) 293 F.2d 568, 571;

(6) all regulations of defendant applied in arriving at the decision were lawful and valid as applied in this case, Marion v. Gardner (C.A. 8) 359 F.2d 175;

(7) it appears in finding the facts that claimant was required to sustain no greater burden of proof than proof by a preponderance of the evidence, the usual burden in administrative proceedings. Sec. 7(c) Ad.Proc.Act; Sec. 556(d), Title 5, U.S.C.; Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 287, 87 S.Ct. 483, 17 L.Ed.2d 362.

On these requirements see Pollard v. Gardner (W.D.Mo.) 267 F.Supp. 890 at 903.

■ In the case at bar, the incorrect legal standards were applied in determining the ultimate issues, because defendant elected to consider the effect of pain in isolation from the other physical and mental impairments of plaintiff, in violation of the fifth standard set out above. The defendant concluded only that pain alone would not prohibit plaintiff from engaging in substantial gainful activity. Under correct legal standards that conclusion may be unwarranted under the third standard set out above when the pain is considered with the physical impairments and functional overlay.

■ It is true that the record shows that defendant considered evidence that the function of plaintiff's back, arms and legs was affected by his physical condition. Accordingly, the defendant found that plaintiff should be restricted to work which did not require "heavy lifting or excessive bending, excessive use of the back," namely only "light or sedentary work not involving such pro-

hibited activities." (Tr. 47) The defendant did not, however, consider that pain, which was shown by practically all the medical evidence of record, may have further impaired plaintiff's motion as he testified it did, or that it may have made such activities as he could perform unduly painful for him. Clearly, "[s]ubjective symptoms of pain are a significant factor to be weighed in determining whether there exists 'disability' * *." Mark v. Celebrezze (C.A. 9) 348 F.2d 289, 292.

> "If a person is unable except under great pain to engage in any substantial gainful activity in which he might be employable, taking into consideration his age, training, work experience and physical and mental capacities, he is deemed disabled for purposes of the Social Security Act." Sayers v. Gardner (C.A. 6) 380 F.2d 940, 948, 23 A.L.R.3d 1014.

The fact that defendant here applied incorrect legal standards is evidenced by its citation of Theberge v. United States (C.A. 2) 87 F.2d 697, 698, in support of its incorrect conclusion that in order for pain to justify the granting of benefits "[t]he only work available to the insured must do more than hurt, it must substantially aggravate his malady. * * *" That rule has been repeatedly repudiated. Sayers v. Gardner (C.A. 6) 380 F.2d 940, supra; Polly v. Gardner (C.A. 6) 364 F.2d 969; Miracle v. Celebrezze (C.A. 6) 351 F.2d 361; Butler v. Flemming (C.A. 5) 288 F.2d 591; Page v. Celebrezze (C.A. 5) 311 F.2d 757. Furthermore, pain need not be proved by objective symptoms in order to warrant its consideration, Ferrell v. Gardner (C.D.W.Va.) 260 F.Supp. 996; nor need pain be accompanied by a "demonstrable organic defect" to be considered, though its presence should be demonstrable by recognized diagnostic techniques, as it was in this case. See

Jones v. Celebrezze (D.Kan.) 246 F.Supp. 701. The criteria to be followed in determining a claimant's ability or inability to engage in substantial gainful activity are objective medical facts, diagnoses and expert medical opinions on subsidiary questions of fact, credible subjective evidence of pain and disability testified to by claimant and claimant's educational background. Sayers v. Gardner, supra. "All complaints must be considered together in determining her work capacity." Burns v. Celebrezze (W.D.N.C.) 234 F.Supp. 1019; Pollard v. Gardner, supra; Lunsford v. Celebrezze (W.D.S.C.) 238 F.Supp. 683.

■ The files and records show that the initial decision of the Secretary (made before the remand) did not take any appreciable cognizance of the considerable evidence of pain. This initial decision only noted that it appeared to be the claimant's "principal impairment" in the summary of the medical evidence and found that "[t]he claimant has an impairment consisting of a degenerative disc which causes him some degree of pain." [3] At the hearing on remand (which was held before a different hearing examiner than the one who had conducted the first hearing), the following additional evidence was taken with regard to pain:

(1) Dr. Leonard Peltier, who did not examine plaintiff, but who examined the medical exhibits in the record, testified as follows (Tr. 147):

> "I think that according to the reports of the various medical examiners that the patient at the time of the examination, was complaining of pain, as far as the reports of the examinations are concerned. The pain was not so severe that the patient could not be given a

3. This finding is unsatisfactory insofar as it does not define the severity of the impairment. Since it was a finding necessary to a decision on disability, this alone might have rendered the initial decision of the Secretary erroneous in that the findings of fact were not sufficient to resolve the ultimate issues as required by the 4th standard set out in this opinion.

completion examination regarding his back.[4] I don't believe that at the time of any of these examinations the patient was suffering severe pain, although he gives a history of having severe, painful muscle spasms at various times."

(2) Dr. R. H. Dunham's certificate accompanying plaintiff's claim for California disability insurance benefits dated December 10, 1963, stated that plaintiff had an 18-to-20 year history of back injury and that he was "unable to flex or extend back completely without pain." (Tr. 300)

(3) A report of Ralph A. Powell, D.C., dated March 24, 1965, reported of plaintiff's condition that it was "possible to promote healing to the point of tolerating everything but excessive activity." (Tr. 249)

(4) William H. Duncan, M.D., in a report dated August 11, 1965, based upon an examination of August 9, 1965, found that "all motion" of the back was painful and that "Routine back tests are positive for discomfort." Further, it was noted that plaintiff "appears to be chronically ill"; that he "walks about in a somewhat stiff and guarded manner with his primary disability at this time being in his lower back region" and that he appeared to be unable to engage in substantial gainful activity. (Tr. 313)

(5) Charles E. Vilmer, M.D., made a report dated February 4, 1966, in which he stated that he examined plaintiff February 1, 1966; that plaintiff reported a "gradual onset of pain in the lower part of his back" first noticed in September 1963 and which has "persisted until the present time"; that "[t]here was no history of injury or acute onset of pain [until] on or about September of 1963";

that plaintiff presently "complains of pain in the lower part of his back, extending into both legs, this being worse on the left"; that plaintiff reports pain in an area "extending from the lumbrosacral spine to the lower dorsal spine" and states that the pain is "present all the time, is relieved somewhat by reclining and is worse with stretching or lifting"; that plaintiff could sit with his legs crossed comfortably; that he "moved with considerable agility and very little discomfort" in and out of the positions required by Dr. Vilmer's examination [which positions are not disclosed, except for the above Patrick's test]; and that normal movements of the thighs, abdomen and legs were accomplished without discomfort or visible change in facial expression. Dr. Vilmer felt that the "objective findings can not be correlated with his subjective complaints"; that a back support would relieve most of the discomfort; that if tasks which did not involve "lifting, excessive stooping or use of the back would be eliminated", plaintiff could engage in substantial gainful activity; and that most of plaintiff's pain was attributable to a "functional overlay," by reason of which plaintiff was also not a good risk for the surgery which might improve, in some respects, his condition. (Tr. 265–266)

(6) William H. Duncan, M.D., in a letter to plaintiff's attorney dated February 28, 1966, stated that plaintiff's condition was not remediable.

In addition, the following evidence of pain was adduced in the first hearing before the defendant:

(1) a report of Harold V. Zuber, M.D., and Harry B. Overesch, M.D., dated May 20, 1964, reports that

---

4. The examination referred to here was apparently that conducted by Dr. Vilmer and reported extensively herein.

"coughing and sneezing causes pain in the low back", and concluded that "This patient is not physically able to carry out heavy lifting, repeated (sic) bending or stooping. He would carry a disability rating for moderate or heavy work." (Tr. 235-236) The same doctors felt, in a letter dated August 7, 1964, and addressed to Missouri Vocational Rehabilitation, that a spine stabilization operation would only trade "stiffness for relief of pain" since "what motion he does have is painful"; and they concluded that plaintiff should not return to his former occupation of welding because of the likelihood that this would produce backache. (Tr. 238)

(2) a report of Dr. Dunham, dated October 8, 1964, in which it is stated, as in a later report listed *supra*, that plaintiff cannot completely extend or flex his back without pain. (Tr. 242)

The finding of the hearing examiner on remand (which was adopted by the Appeals Council to become the final decision of the Secretary) was that:

"7. Claimant would not be precluded by pain alone from engaging in any substantial gainful activity. Furthermore, the wearing of a low back support would substantially reduce the amount of low back discomfort on motion."

This finding was defective in view of the erroneous application of the *Theberge* case, *supra*. Under proper legal standards, stated above, the finding against plaintiff was not supported by subtantial evidence. The only doctors who specifically found that plaintiff was not precluded by pain from engaging in substantial gainful activity were Dr. Peltier, who did not himself examine the plaintiff, and Dr. Vilmer, whose opinion was based on an irrelevant criterion,

namely whether the subjective complaints were well-founded in objective symptoms. Dr. Vilmer nevertheless found that plaintiff suffered from a considerable functional overlay and constant pain. The source of a claimant's pain is not material. Combs v. Gardner (C.A. 6) 382 F.2d 949. Further, Dr. Vilmer's depreciation of the objective symptoms is somewhat contradicted by his contention that most of the pain could be diminished by certain spinal fusions which could not be undertaken because of plaintiff's "functional overlay." The opinions and findings of Drs. Dunham, Powell and Duncan, on the other hand, are based on correct legal standards and are consistent with a finding of inability to engage in substantial gainful activity at the time of the hearing and prior thereto. The findings of Drs. Zuber and Overesch, that plaintiff was disabled from moderate or heavy work, are sufficient to disqualify plaintiff from doing the kind of work which defendant found suitable for him in denying benefits, as noted hereinafter.

Further, it is clear that the hearing examiner did not consider any combination of pain and impairments which were objectively demonstrable. After it had been determined on the basis of the objective manifestations alone that plaintiff suffered from a medically determinable physical impairment within the meaning of the Social Security Act, but not one which prohibited him from engaging in light to moderate activity, the hearing examiner concluded:

"It thus appears that unless it can be found that the claimant suffers pain of such severity as to prevent his engaging in any substantial gainful activity within the tests herein defined, his disability application should be denied."

Then the hearing examiner made three separate and unrelated findings on pain alone, mental impairment alone and physical impairment alone.[5] This was in

5. They were as follows:
"6. Claimant does not have a severe mental impairment.

"7. Claimant would not be precluded by pain alone from engaging in any substantial gainful activity.

violation of a basic legal standard that the impairments should be considered together. Pollard v. Gardner, *supra*; Burns v. Gardner, *supra*; Lunsford v. Celebrezze, *supra*. The evidence of pain, when considered with the "objective" evidence that there was limitation of all motion in the spine and limbs, that plaintiff suffered from osteoarthritic changes, considerable lipping and spurring, lumbarization, degenerative disc and other related defects, and with the evidence of functional overlay or psychogenic impairment, shows by more than a preponderance of the evidence that plaintiff suffers a disability to engage in any substantial gainful activity of the kind which the Secretary has in the administrative proceedings deemed suitable for him or which under the law is suitable. The conclusions of Drs. Zuber and Overesch that plaintiff was disabled even from moderate work, that plaintiff suffered pain with all motion, and in fact with mere coughing or sneezing and that the condition had persisted for some 20 years and was static, supports plaintiff's claim of inability to engage in any substantial activity during the relevant period. Dr. Dunham's report of plaintiff's inability to flex or extend the back without pain is also consistent with such a conclusion. Further, Dr. Powell's conclusion that it would require treatment "to promote healing" to a point where plaintiff could tolerate everything "but excessive activity" supports the inference that inability existed.

■■■ As stated above, Dr. Peltier and Dr. Vilmer were the only examiners failing to affirm such disability. Their opinions do not, in the circumstances of this case, constitute substantial evidence because the former did not examine the plaintiff (see Mefford v. Gardner (C.A. 5) 383 F.2d 748; Cohen v. Perales (C.A. 5) 412 F.2d 44 (decided May 1, 1969)) and the latter assumed that the subjective symptoms must be objectively demonstrable. See Ferrell v. Gardner, *supra*.[6]

■■ Under the fourth standard set out above, it is concluded that there were not sufficient findings of fact to resolve the crucial issues in the case because there was no finding on the issue of plaintiff's inability to engage in any substantial gainful activities in the relevant period resulting from the cumulative effects of all of plaintiff's physical and mental impairments. The case could be remanded to require such a finding, except that defendant, by virtue of one

Furthermore, the wearing of a low back support would substantially reduce the amount of low back discomfort on motion.

"8. Claimant's back impairment would preclude him from engaging in tasks requiring heavy lifting or excessive bending, excessive stooping, or excessive use of the back but would not prevent him from engaging in light or sedentary work not involving such prohibited activities."

6. There must be a factual basis for the Secretary's conclusions, according to the rule expressed in Nichols v. Celebrezze (S.D.Iowa) 243 F.Supp. 921. The factual basis must be rational. Hoffman v. Ribicoff (C.A. 8) 305 F.2d 1, Cody v. Ribicoff (C.A. 8) 289 F.2d 394, 396, 88 A.L.R.2d 970. Where the expert medical evidence is not substantially controverted, the decision must be in accord therewith. Branham v. Gardner (C.A. 6) 383 F.2d

614. The hearing examiner, in reaching his conclusion, also relied upon nonmedical evidence that plaintiff could drive his car for short distances, has occasionally walked short distances, could burn the trash daily (including the garbage), and could watch TV for up to two hours at a time. These, however, do not rebut the showing of severe disability of plaintiff. In the first place, such findings are based upon questionable, often controverted single items of evidence. One witness testified that she had never seen plaintiff empty the trash, for instance, and others testified that when he did do any minor yard chore, his gait was extremely slow and impeded him in the task. Thus, even if presumed to be true, the evidence of record indicates the tasks were not performed with a facility which even light work tasks in the commercial world would demand. According to the evidence also, most tasks which plaintiff does, can only be done with great pain. This constitutes a disability within the terms of the Act.

hearing and another on remand, has had ample opportunity to take evidence on the issues (see Sayers v. Gardner, *supra,* 380 F.2d at 955), and the evidence, as has been outlined above, establishes by far more than a preponderance the disability of the plaintiff. This is apparent from the fact that the vocational tasks asserted by the vocational experts to be suitable to plaintiff's level of abilities are beyond plaintiff's limited abilities established by the evidence. Of the jobs mentioned by the vocational expert in the last hearing (and found by the hearing examiner to be within plaintiff's abilities) those of ampoule examiner, flagman and bottling line attendant would require, at the least, the type of protracted standing or sitting of which plaintiff is obviously not capable, in view of the stiffness and pain which attend his condition, and the reports of the medical examiners.[7] The jobs of salesman-driver, taxi driver, machine container washer and production line solderer, in addition to prolonged standing or sitting, demand bodily dexterity and coordination, of a substantial degree, proved to be beyond plaintiff's ability by more than a preponderance of the evidence.

 For another and independent reason plaintiff is entitled to recover. Even assuming that defendant's findings with regard to the severity of plaintiff's impairments are correct, it is apparent, in view of nearly unanimous medical opinion to such effect, that plaintiff has made a case of his inability to return to his former employment of welder because of his impairment. In these circumstances, the burden of going forward with the evidence and of persuasion shifts to the defendant to prove that suitable employment for plaintiff exists in the national economy. Section 423(d) (2) (A), Title 42, U.S.C.; Corbin v. Ribicoff (W.D.S.C.) 204 F.Supp. 65; Nelson v. Gardner (C.A. 6) 386 F.2d 92; Carico v. Gardner (C.A. 4) 377 F.2d 259; Kozik v. Celebrezze (N.D.Ohio) 228 F.Supp. 381; Lane v. Gardner (C.A. 6) 374 F.2d 612; Hamilton v. Gardner (S.D.W.Va.) 265 F.Supp. 640. The defendant, however, failed to meet this burden of going forward with the evidence. While a vocational expert testified in the first hearing that suitable employment existed for plaintiff in the national economy,[8] his opinion was unsound because, among other reasons, (1) he "assumed," as a basis of his testimony, that plaintiff was "at least average in intelligence"; and (2) the testimony rendered by the vocational expert was not based on all of the medical evidence of record, but rather upon "hypotheticals" posed by the hearing examiner, by which the expert was required to assume that the conclusory findings of first one, then the other, of the medical examiners of record were true, when such separate findings ignored pain and other factors required to be considered. Further the expert was never asked to base his opinions on the medical and other evidence of record.

7. All the medical examiners, with the single exception of Dr. Vilmer, found prolonged sitting or standing beyond the physical capacity of the plaintiff. Virtually the only fact of record which would tend to support suitability for these tasks is that plaintiff was purportedly able to sit and watch TV for two-hour intervals.

8. The applicable statute, Section 423(d) (2) (A), defines job availability as follows:

"An individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether snch work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied. for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

 At page 124 of the transcript, the vocational expert began his testimony with the following statement:

"In trying to analyze the prior jobs that you had, these jobs have all been analyzed by job experts, the Labor Department Employment Service, various people involved in these types of analyses, and the welding experience, people who perform this type of job generally fall in the middle one-third of the population, their level of intelligence. So I am going to assume from the type of work that you've done in the past, that you are at least average in intelligence."

The assumption is neither logically warranted by the statement which precedes it nor justified by the evidence. The word "generally" makes it certain that, with regard to plaintiff, the assumption has not been applied individually as required under the Social Security Act.[9] In such cases as this, the expert should consider evidence of all of plaintiff's (1) objective symptoms; (2) "Subjective evidence of pain and disability"; (3) medical testimony; and (4) plaintiff's educational and other background, history and present age. Hicks v. Gardner (C.A. 4) 393 F.2d 299. Further, the standard against which job opportunities are to be compared is not the average man but "the individual claimant himself, with all his personal assets and liabilities." Drafts v. Celebrezze (E.D.S.C.) 240 F.Supp. 535, 538. The evidence of record does not in any way justify the expert's assumption concerning plaintiff's intelligence. Plaintiff

had only a seventh-grade education. Reports of record on his previous work history report poor performance and some emotional volatility.[10] The record of his participation in the administrative proceedings reveals him often to have made statements which showed little understanding of the context of the proceedings or of the direction of his interest therein.[11] On the other hand, there is no direct evidence of average intelligence in this record.

The second reason that the vocational expert's testimony in the original administrative hearing is entirely inapplicable to the particular conditions of plaintiff is that the hearing examiner required the expert to make certain impermissible assumptions in regard to plaintiff's condition in giving his opinions. Thus, the entire list of suggested possible employments read by the expert came in answer to the hearing examiner's question requiring the expert to assume, in accordance with Dr. Overesch's opinion, that plaintiff "without surgery * * * is prohibited from doing moderate or heavy work, and can do only light work that involves neither heavy lifting nor repeated stooping or bending." (Tr. 124) Then, the expert was required to assume that Dr. Overesch's "second statement" was true, that surgery would do away with pain on excessive bending, stooping or lifting. (Tr. 130) The assumption is misleading and inaccurate because it was Dr. Overesch's opinion that any operation would only "trade pain for stiffness." The question nevertheless evoked the response from the expert that such

---

9. The argument, put in syllogistic form, suffers from a faulty minor premise, thus:
 1. Many who perform in this occupation fall in the middle third of the population in intelligence.
 2. Plaintiff performs in this occupation.
 3. Therefore, plaintiff's intelligence falls within the middle third of the population.

10. The medical reports of some psychogenic risk in any operation reflect this, as does the fact that his former employer pur-

ported to dismiss him for poor performance. (Tr. 266, 273)

11. When asked, for instance, by the first hearing examiner whether he questioned the qualifications of the vocational expert, plaintiff answered, "No, no, he's a smarter man than I am." (Tr. 122) When it was explained that the superiority in intelligence was of no importance, plaintiff replied: "He's got too many degrees on me, no hard feelings." (Tr. 123)

would substantially broaden the range of employment which plaintiff could perform. Finally the expert stated that his answers would be substantially the same, assuming that Dr. Dunham's report was correct and the plaintiff could engage in "sedentary activity only." (Tr. 131) No question addressed to the vocational expert permitted him or required him to consider the entire medical evidence in combination as it bore upon the considerations to be made by him in consonance with the rule of Hicks v. Gardner, *supra,* rather than merely the separate conclusory opinions of the medical examiners in respect of the degree of activity of which plaintiff was capable. Further, Dr. Dunham's report was unfairly summarized in a finding only that the condition of plaintiff could not be remedied by surgery. The opinion of Dr. Overesch was also unfairly summarized by stating only his conclusion on the kind of work which could be performed. Further, it was Dr. Overesch's conclusory opinion in his final letter to defendant that plaintiff should engage in only "light to moderate work," thus indicating a lesser degree of ability than that represented by the hypothetical question of the first hearing examiner.

 Therefore, no substantial credible evidence was received at the first hearing that there were job opportunities in the national economy suitable for a person of plaintiff's particular combinations of physical and mental impairments and disabilities. Such testimony as was given on the subject was immaterial because it was based only upon the isolated selected conclusions and ignored a large part of the evidence.

 The testimony which was given by the vocational expert at the hearing on remand was also unsound because it was limited by the hearing examiner's questions to several isolated conclusory opinions of some of the medical examiners of record. As he addressed the vocational expert at the beginning of his inquiry, the hearing examiner stated:

"[Y]ou understand that it is not your responsibility to determine the degree of this man's impairment but this is the responsibility of the trier of the facts. So, accordingly, the Hearing Examiner is going to ask you some questions based upon the assumed findings on the nature and degree of the claimant's impairments." (Tr. 184)

While the assumption that the hearing examiner is the trier of fact who is to determine the degree of the plaintiff's impairment is in accord with the applicable statute, the assumption in this case of final findings at this point was improper. The hearing examiner should consider, among other things, the testimony of the vocational expert before determining the existence and degree of disability. In turn, the vocational expert is to base his opinion "on the testimony and record in the case, and observation of the claimant during the hearing," Whitt v. Gardner (C.A.6) 389 F.2d 906, 910, or otherwise upon a "sufficient assumption of appellant's capabilities." Whitt v. Gardner, *supra,* at 911; Pendergraph v. Celebrezze (M.D.N.C.) 255 F.Supp. 313. The examiner's subsequent hypothetical questions to the vocational expert were accordingly limited by asking successively what jobs were available if the isolated selected conclusory opinions, phrased in terms of levels of ability and impairments, were "assumed to be true." Thus, the following hypothetical questions were successively submitted by the examiner to the vocational expert:

(1) "Assume that the Hearing Examiner should find that the findings of Dr. Overesch in his medical reports of record are true, that claimant, in his present condition has a back impairment which would prevent him from doing heavy lifting and repeated stooping or bending, that he carries a disability rating from moderate or heavy work. Now, do you have an opinion as a Vocational Consultant, whether there are any

light or sedentary jobs that this man would be able to perform in view of his age, education, and prior work experience?" (Tr. 185)

(2) "Now * * * the findings that were made in the report by Dr. Vilmer, if the Hearing Examiner should find that those findings were true, now they, I don't think differ a great deal from the findings of Dr. Overesch. But assume that the Hearing Examiner should find that those findings were true and that claimant's present back impairment would permit him to perform most activities without a lot of difficulty and if lifting, stooping or excessive use of the back were eliminated, that he could be kept fairly comfortable by wearing a low back support which would keep motion out of the lower back, now these jobs that you have mentioned under that assumption, would he be able to perform these light and sedentary jobs that you have mentioned here?" (Tr. 194)

(3) "Now, assume that the Hearing Examiner should find that the reports of Dr. Dunham, Exhibits 20 and 21 which he made on May 5 and 10 or May 5 and October 8, 1964, are true, and in there he said that the claimant's back impairment would prevent anything but sedentary activity. Now, these sedentary jobs that you have mentioned here, do you feel like he would be able under that assumed finding to perform those sedentary jobs?" (Tr. 195) [The vocational expert's answer to this hypothetical question was comprised only of a vague reference to some of the previously mentioned jobs, and the vocational expert stated that he had great difficulty in interpreting what Dr. Dunham meant by "sedentary."] (Tr. 195)

(4) "Now, you have listened to the testimony of Dr. Peltier concerning what his opinions were as to this man's residual functional capacity. Do you feel like these jobs that you have mentioned here, if the Hearing Examiner should find that Dr. Peltier's testimony is all true, that he would be able to perform these particular jobs that you have mentioned?" (Tr. 195–196)

(5) "Now, assume that the Hearing Examiner should find that the findings of Dr. Duncan in his two reports are true and wherein Dr. Duncan concluded that the claimant is unable to engage in any substantial gainful activity by reason of the above clinical finding, and no improvement is expected in the future and he will be continuously disabled, now, if I should make a finding that Dr. Duncan's medical findings are true, do you have an opinion as to whether, based on that assumption, that this man would be able to work?" (Tr. 196)

[Here, the vocational expert stated that he felt that he was concluded by the doctor's determination that "he is disabled and cannot engage in substantial gainful activity. I would have to go along with him."]

The principal error in all these hypothetical questions is that they unanimously disregard the pain and discomfort of plaintiff and the functional overlay, to which "great consideration must be accorded." Drafts v. Celebrezze, *supra*; Wiley v. Celebrezze (W.D.Mich.) 244 F.Supp. 504; Pendergraph v. Celebrezze, *supra*, 255 F.Supp. at 322. This error alone makes the answers to the questions irrelevant to the condition of the plaintiff in the case at bar. Further, as in the first hearing, only the barest conclusory findings of the examiners were set out in the respective hypothetical questions in respect of the level of disability. In many instances the

questions did no more than ask the expert what jobs existed for someone who could do only moderate or sedentary work, a consideration completely divorced from the individual traits and impairments of plaintiff. The standard to be applied is not "the standard of the ordinary or the average man * * * [but] the individual claimant himself, with all his personal assets and liabilities." Drafts v. Celebrezze, *supra*, 240 F.Supp. at 538.[12] Thus, the testimony given was irrelevant and immaterial to the particular assets and liabilities of the plaintiff in the case at bar.

Further, the series of hypothetical questions submitted only a series of isolated considerations and answers which ignored the greater part of the record. Never was the record of all the medical evidence, nor the substance thereof, submitted as a whole. Hypothetical questions regarding the findings of Dr. Powell or Dr. Fitzgerald were omitted. The testimony of the vocational expert was, for this reason, inadequate to support the findings based thereon.

Finally, the testimony of the expert with regard to the types of employment which were available regionally or in several regions of the country was particularly inconclusive. With regard to the job of ampoule inspector—or similar jobs—the expert testified that none were available locally. The work need not be available locally but must exist somewhere in the national economy; but the expert did not otherwise testify on availability in the national economy. There was only related employment which was comprised of inspecting and testing machines. The expert's testimony was that the local concerns were interested in upgrading the educational and intellectual levels of their employees. These requirements would have virtually excluded plaintiff from consideration.[13] The janitor job was not ascertained to be regionally or locally available,[14] nor was the solderer or inspector job represented as being currently available.[15] No regional location of the construction flagman job was divulged,[16] nor of taxi driver openings.[17] It was ascertained that Pepsi-Cola Bottling Company employed bottling line attendants, but there was no clear testimony that they had available positions.[18] With regard to the machine container washer job, the vocational expert testified that he checked locally, but gave no specific facts in respect to where he checked and where the vacancies existed.[19] Only the diaper service delivery job was ascertained to be locally available, and the requirements of a delivery job, in view of plaintiff's stiffness, lack of mobility, slow gait and constant pain, would exclude him from performing the tasks required in it.

■ Furthermore, at the remand hearing, plaintiff offered considerable

---

12. The deficiencies of the assumed facts regarding the claimant which were conveyed by such vague and general hypothetical questions is indicated by the vocational expert's stating that he did not know what Dr. Dunham had meant by "sedentary."

 If the hearing examiner, however, had asked the expert to assume the essentials of the medical diagnosis made by Dr. Dunham—(1) osteoarthritis of the 3d and 4th lumbar vertebrae with destruction of the interspace between them, (2) inability to flex or extend back completely without pain, (3) muscle spasms in the lumbar region, and (4) in addition to the above "objective findings", there was "acute exacerbation" of [plaintiff's] pre-existing condition" and that (5) the condition was "static or deteriorating," it would have been clear what Dr. Dunham meant. It would have been clearer yet if the hearing examiner had summarized the medical evidence of record in its essentials.

13. Tr. 188, 190.

14. Tr. 189, 190.

15. Tr. 190–91. "I am not saying that these jobs are available right now. I would not want this to be misconstrued."

16. Tr. 192.

17. *Id.*

18. Tr. 193.

19. Tr. 193–194.

evidence of his unsuccessful attempts to find employment. When such evidence is offered, less evidence is needed to support a finding of disability than when he has failed to make such attempts. Walston v. Gardner (C.A.6) 381 F.2d 580.

For the foregoing reasons, the Secretary's findings that suitable employment existed in the national economy and also in the Kansas City metropolitan area are not supported by substantial evidence as required by the third standard set forth above.

It is not within the power of a federal district court to resolve conflicts in the evidence properly determined by the Secretary. And that is not done in this case. When, however, the findings of fact are not supported by substantial evidence and are not sufficient to resolve the crucial issues; and when the incorrect legal standards have been applied; and when after a fair opportunity to present evidence, the record shows the plaintiff entitled to the benefits, the decision of the Secretary should be reversed and a judgment awarding benefits in accordance with the prayer of plaintiff should be entered. It is therefore

Ordered that defendant's motion for summary judgment be, and it is hereby, denied. It is further

Ordered and adjudged that plaintiff be, and he is hereby, found to have been unable to engage in any substantial gainful activity by reason of medically determinable physical and mental impairment which has lasted continually since September 30, 1963, until the date of the second hearing herein, namely the 10th day of March 1966. It is further

Ordered and adjudged that the decision of the Secretary herein denying benefits herein be, and it is hereby, reversed and the Secretary ordered to grant the claim of plaintiff herein.