**Currie L. SMITH, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 640.**

United States District Court
E. D. North Carolina,
Fayetteville Division.

May 22, 1964.

L. J. Britt and Son, Lumberton, N. C., for the plaintiff.

Robert H. Cowen, U. S. Atty., E. D. North Carolina, Raleigh, N. C., for the defendant.

DALTON, District Judge.

In this proceeding Currie L. Smith seeks judicial review of a decision by the Secretary of Health, Education and Welfare disallowing his claim for benefits under Title II of the Social Security Act, as amended (42 U.S.C.A. § 401 et seq.). (hereinafter called the Act) Plaintiff filed his application to establish a period of disability [1] and for disability insurance benefits under Sections 216(i) and 223 of the Act, respectively, (42 U.S.C.A. §§ 416(i), 423) on November 7, 1960, alleging that he became unable to work on January 9, 1960, as a result of a back injury and neuritis. The application was denied initially and upon reconsideration by the Bureau of Old-Age and Survivors Insurance. He then appeared before a hearing examiner who considered the case *de novo* and found that the plaintiff had failed to establish that he was disabled within the meaning of the Act. This became the final decision of the

---

1. A "period of disability", or so-called "disability freeze", contemplates eliminating the no-income period of disability from the earning records of the plaintiff, thus increasing the average monthly wage, and, therefore, the future amount of old-age benefits.

Secretary when the Appeals Council denied the plaintiff's request for review on November 29, 1961.

The Secretary is required to consider and evaluate all the medical evidence relating to the claimed disability and all the non-medical evidence in the case including the subjective statements by the claimant, and on the basis of all this evidence, decide whether or not a claimant is disabled. The scope of the review of his decision in this Court is limited by Section 205(g) of the Act (42 U.S.C.A. § 405(g)), which provides that the findings of the Secretary as to any fact shall be conclusive if supported by "substantial evidence". Substantial evidence means more than a mere scintilla—it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. of New York v. N. L. R. B., 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

Not every serious impairment entitles one to benefits under the Act. The plaintiff, with his peculiar talents and experiences, in order to establish a claim for benefits, must carry the burden to show:

" * * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." 42 U.S.C.A. §§ 416 (i), 423.

The issue in this case, then, is whether there is substantial evidence in the record to support the Secretary's determination that the plaintiff has failed to establish a medically determinable impairment rendering him unable to engage in any substantial gainful activity. This Court is of the opinion that the Secretary's decision is supported by the evidence in that the plaintiff's intelligence and managerial experience qualify him for employment entailing service in a supervisory capacity or in other capacities not requiring substantial amounts of physical activity.

Although Currie Smith did not progress far with his formal education, not having completed the ninth grade, he is represented as highly intelligent and cooperative in answering questions. He was born November 11, 1912, and thus was forty-seven years old at the time he quit working, the date of his alleged disability onset. His work experience was primarily in a supervisory capacity. From 1939 through 1944 he was employed by the A&P Company as a market manager. In the year 1947 he went to work for the Colonial Stores chain and was employed by this firm until January 1960, working as a manager of the meat department in Colonial Stores of several North Carolina communities. In this capacity he was responsible for the entire operation of the meat department but, being a skilled butcher, he also personally did meat cutting and packaging.

It was in this latter connection that an accident occurred on September 29, 1959, which led to the alleged disability. On this date plaintiff was carrying a quarter of beef from the refrigeration room when his foot slipped and he felt his back jerk. Apparently, he did not suffer severe injury at that time for he continued working and first sought medical attention on October 13, 1959. He was able to work every day after the injury although he had to be careful about lifting heavy objects. This situation continued until January 9, 1960, when he quit working because he could no longer stand on his feet for any length of time without developing trouble in his back, sides, and down into his legs. However, in an interview at the Social Security District Office on November 8, 1960, he reported that standing caused him pain but that he was fairly comfortable while sitting. He also reported that on his doctor's advice he was taking walks daily, walking downtown and back, a round trip of approximately thirty-six blocks. (Tr. 57) He also stated that he was able to drive his automobile.

At the hearing, Smith testified that he had received several job offers since terminating his employment but that he was unable to take them because of his back condition. In addition, he stated that he had, for a short period, attempted working in a market for a member of his family but had not been successful in his effort also because of his impairment.

■ In light of the above history of plaintiff's case the Court must consider: (1) the objective medical evidence, (2) the diagnosis of treating and examining physicians and their expert medical opinions as to the over-all effect the condition will have upon the plaintiff (but not including their opinions on the ultimate issue), and (3) the subjective evidence of pain and disability brought to light by the plaintiff and others testifying on his behalf. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).

Dr. Stephen McIntyre, plaintiff's personal physician, submitted two reports concerning plaintiff's condition. (Tr. 59–60, 80) In the first report, dated November 22, 1960, Smith's condition was diagnosed as myositis (muscle inflammation) and neuritis (nerve inflammation) with back pains radiating forward. Objective findings by Dr. McIntyre included tenderness over the lumbar spine limiting motion and activity. "Limitation 50% in all planes of spinal motion." He was ambulatory but, according to Dr. McIntyre, the condition required continuous therapy "with no lasting response". Plaintiff's activity limitations were reported as follows: "unable to lift or stand, very little walking." In the latter report, dated June 29, 1961, Dr. McIntyre stated:

"This is to certify that I have treated Currie L. Smith since October 13, 1959 continuously, seeing him on an average of from one to three times a week, for a back injury * * *

"I considered Mr. Smith partially disable from October 13, 1959 to January 9, 1960. Since that time he has been totally disable, and he is still under my care, my last examination and treatment having been on June 27, 1961.

"* * * [T]he length of total disability is undetermined because I feel that his condition has reached its maximum improvement and is now static. I also concur with Dr. Jacobs [an orthopedic surgeon to whom Dr. McIntyre referred Smith] in that he has a partial permanent disability of at least 20% in the use of his spine, and it is my opinion that unless there is drastic improvement in his condition that he is permanently disable and will be unable to carry on his trade as a butcher or do any form of manual labor."

Mr. Smith, upon referral from Dr. McIntyre, was seen on at least six occasions by Dr. Julian E. Jacobs of the Miller Clinic in Charlotte, North Carolina, from September 1, 1960, to February 1961. (Tr. 81) Dr. Jacobs diagnosed plaintiff's ailment as a thoracolumbar sprain with radiculopathy (disease of the roots of spinal nerves). On September 1, 1960, Dr. Jacobs indicated that he was treating Smith conservatively, "to see if he shows any improvement." He reported that x-rays show "nothing too phenomenal" and that there was no evidence of low back involvement. (Tr. 61–62) On September 15, 1960, Dr. Jacobs wrote:

"Patient is a touch better. * * * He is wearing a sacroiliac support which is fairly adequate, which he cannot tolerate all the time, which is consistent with the radiculopathy he has. On the same basis, feel he should go another month before we can talk about light work for him. * * * "

After a visit on October 21, 1960, Dr. Jacobs reported:

"* * * we feel he is making definite improvement, but not enough to warrant wrestling a big ½ beef yet. * * * "

On November 21, 1960, Dr. Jacobs wrote:

"Patient still having some right leg reference. Dr. McIntyre treated him daily for awhile with ultrasonic and now 3 or 4 times a week. * * Continues wearing his sacroiliac support and will continue seeing Dr. Steve McIntyre."

In a report to Dr. McIntyre on March 14, 1961, Dr. Jacobs wrote:

"This will confirm my telephone conversation with you regarding Mr. Currie L. Smith's disability rating as of 2–1–61. The x-rays that date showed a complete attrition disc at the lumbosacral level, persistence of muscle spasm limiting his spinal motions to 50% in all planes. * * He stated he was only able to sleep 2 to 4 hours at night because of discomfort. He stated he stayed in bed half during the day.

"As result of these findings I feel he will have a partial-permanent disability of 20% in the use of his spine.

"You will recall that on September 7, I indicated he should have a myelogram [an x-ray picture of the spinal cord after the injection of a contrast substance] if his symptoms continued, that he might end up with a laminectomy and fusion across the lumbosacral area. This recommendation still obtains."

The record also contains a report from Dr. Lenox D. Baker, Professor of Orthopaedic Surgery at Duke University Medical Center in Durham, North Carolina, material portions of which follow:

"[Currie Smith] was first seen here in 1955 at which time he had a complaint of low back pain of questionable etiology. * * * He was next seen here in February 1960 with an Industrial Commission complaint associated with an alleged accident of September 29, 1959. * * * Our examination showed a *fairly good range of motion in the back* associated with some complaint of pain. Hyperextension was slightly limited.

*Neurological examination showed bilateral equal reflexes. No muscle weakness. No atrophy. No sensory changes.* X-Rays showed some rounding off the 5th lumbar vertebra with narrowing of the intervertebral space. * * * *We made no findings indicative that this patient was totally disabled.*" (Emphasis added)

It should be noted that this report reflects Dr. Baker's findings as to the plaintiff's condition at a time subsequent to the alleged date of disability onset.

A report from Dr. C. F. Siewers of the Fayetteville, North Carolina, Orthopaedic Clinic stated that plaintiff had been seen there in July 1960 and again at the date of the report on March 29, 1961. On the latter date plaintiff gave a history of severe pain on any motion of the back. He stated that he had pain 95 percent of the time and thus was getting only three to four hours sleep per night.

Dr. Siewers also found plaintiff's back flexion limited thirty degrees by pain. Back extension was limited but there was full lateral bending. Dr. Siewers reported tenderness of the spine of the second, third, fourth, and fifth lumbar vertebra but there were no spasms when prone. Straight leg raising went to ninety degrees bilaterally but hip motion was voluntarily limited. Neurological examination revealed some decrease in sensation of the entire right leg. Reflexes were equal and active and there was no atrophy or weakness in the legs. X-rays of the lumbar spine were taken and compared with similar ones taken in July 1960, the results of which were reported as follows:

"X-rays of the lumbar and lumbosacral spine show narrowing of the lumbosacral innerspace with slight posterior displacement of the 5th lumbar vertebra on the sacrum. There are early degenerative changes."

Dr. Stephen McIntyre testified for plaintiff in a hearing before the Industrial Commission in Lumberton, North

Carolina, on July 6, 1961. He stated that Smith had lost thirty-five pounds in weight and was unable to sleep or rest. Dr. McIntyre held the view that plaintiff was in pain practically all the time. The hearing examiner also considered and eventually accepted the finding of Dr. R. L. Herman, a medical consultant for the North Carolina State Board of Public Welfare who reviewed the medical evidence in the record and found that plaintiff's impairments were not of sufficient severity to preclude all substantial gainful activity from "one who is comparatively young and has managerial experience." This ultimately became the final decision of the Secretary manifested in the conclusions reached by the hearing examiner.

A determination of Smith's ability to engage in substantial gainful employment, commensurate with his background and experience, "requires resolution of two issues—what can applicant do, and what employment opportunities are there for a man who can do only what applicant can do?" Kerner v. Flemming, 283 F.2d 916 (2d Cir. 1960). The hearing examiner found, in effect, that Smith was capable of performing work of a sedentary nature for which he "is fully trained and qualified" by his supervisory experience. (Tr. 12) Where, as in the instant case, the inability to work, if any, manifests itself primarily in the experience of severe pain upon physical exertion, which for the most part cannot be subjected to clinical evaluation, it has been suggested that no matter how severe the pain, it is not to be considered disabling unless it can be shown that working would substantially aggravate the malady. See, Butler v. Flemming, 288 F.2d 591 (5th Cir. 1961). But as the court said in the Butler case:

"* * * the purpose of much social security legislation is to ameliorate some of these rigors that life imposes. Congress has in effect stated that if a person is unable except under great pain to engage in any substantial gainful activity in which he might be employable, tak-ing into consideration his age, training, work experience and physical and mental capacities, he shall be deemed to be disabled for the purposes of this Act." 288 F.2d at 595

Certainly, it must be concluded that the experiencing of pain, without more, can be sufficient under certain circumstances to bring a claimant within the wording of the Act. Lewis v. Flemming, 176 F.Supp. 872 (E.D.Ark.1959) In 'the Lewis case the applicant was found to be disabled by reason of severe arthritic pains which limited his ability to do manual labor. He was found not suited for sedentary work since all his working experience involved heavy physical labor such as working as a blacksmith, farming and carpentry. The like cannot be said for a man who has spent twenty years or more serving in a supervisory capacity for large chain retailing establishments. It is true that Currie Smith's formal education was relatively limited but it would appear that with his native intelligence he was able to rise above his limited schooling.

The medical evidence, though adequate, lends itself to conflicting inferences. The latter report of Dr. McIntyre, dated June 29, 1961, stated that he considered Smith totally disabled from January 9, 1960, but concluded only that he would be precluded from carrying on his trade as a butcher or doing other forms of manual labor. Dr. Jacobs in October 1960 reported that Smith was making definite improvement, "but not enough to warrant wrestling a big ½ beef yet." Dr. Baker, Professor of Orthopaedic Surgery at Duke University, reporting the results of an examination one month after the onset of the alleged disability stated, "We made no findings indicative that this patient was totally disabled." Although the record as a whole clearly shows that the applicant's capacity was limited by the back ailment from which he suffered, it cannot be said that the Secretary's conclusion is without substantial support in the evidence. This is especially true when viewed in the light that this was a man with twenty years'

managerial experience, who, at a date subsequent to the alleged onset of disability, was reported as able to drive his own car; able to walk approximately thirty-six blocks daily; and who reported being fairly comfortable when sitting down. (Tr. 57–58)

Based on the applicant's present earnings record, he will meet the "insured status" requirements of the Act until the end of the first quarter of 1965. If before that time his condition has changed or deteriorated to the point where he is unable to engage in any substantial gainful activity, he should file a new application to establish entitlement to benefits under the Act. But as stated by the court in Gotshaw v. Ribicoff, 307 F.2d 840 (4th Cir. 1962), "the court has no power to enter any judgment in anticipation of the filing of an application."

The defendant's motion for summary judgment is granted and the action is dismissed.

An order will be entered accordingly.

