Mildred **GATES, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 76CV43–C.**

United States District Court, W. D. Missouri, C. D.

June 27, 1977.

James R. Hicks, Jefferson City, Mo., for plaintiff.

E. Eugene Harrison, Asst. U.S. Atty., Kansas City, Mo., for defendant.

ORDER DENYING DEFENDANT'S MO-
TION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFF'S CROSS–
MOTION FOR SUMMARY JUDG-
MENT, AND REMANDING ACTION
TO THE SECRETARY OF HEALTH,
EDUCATION, AND WELFARE FOR
THE TAKING OF ADDITIONAL EV-
IDENCE, THE APPLICATION OF
CORRECT LEGAL STANDARDS,
AND THE MAKING OF ADDITION-
AL AND AMENDED FINDINGS

ELMO B. HUNTER, District Judge.

This is a petition for review, pursuant to the provisions of Section 405(g), Title 42, United States Code, of a determination of the Secretary of Health, Education and Welfare denying plaintiff's application for disability benefits. Under that section, it is the function of this court chiefly to review the administrative record to determine whether the action of the Secretary is supported by substantial evidence. "The role of the Court is solely to determine if there is substantial evidence to support the Secretary's decision." *Payne v. Weinberger,* 480 F.2d 1006, 1007 (5th Cir. 1973). And the primary issue is whether there is substantial evidence in the administrative record to support the determination that plaintiff has not been unable, by reason of a medically determinable physical or mental impairment, to engage in substantial gainful activity for a period of 12 consecutive months. See § 423(d)(1), Title 42, United States Code.

1. The initial determination of disability *vel non* on the application for benefits is ordinarily made by the state vocational rehabilitation agency, see Section 421(a), Title 42, United States Code, or by the Secretary "in accordance with regulations prescribed by him," see Section 421(g) of the same title, and it may then be reviewed and reconsidered by the Secretary. See Section 421(c) of the same title. Thereafter:

"Any individual dissatisfied with any determination . . . shall be entitled to a hearing thereon by the Secretary . . . and to judicial review of the Secretary's final decision after such hearing as is provided in Section 405(g) of this title."

Section 421(d), Title 42, United States Code. See also Section 405(b) of the same title.

*The Administrative Record*

A review of the administrative record shows that plaintiff filed her application for social security disability benefits with the Secretary on February 4, 1974. Therein, she claimed that she had become unable to work because of her alleged disability—which she described as a "bone virus, weakness in both legs"—on November 11, 1973. (Tr. 59–62.) By letter to her dated March 7, 1974, the Social Security Administration advised plaintiff that "[y]our social security record . . . shows that you meet the earnings requirement for disability purposes until September 30, 1974," but that "you are not entitled to disability insurance benefits because you do not meet the disability requirements of the law." (Tr. 63.) Plaintiff thereupon requested reconsideration of her application (Tr. 65) and her application was again denied on reconsideration. (Tr. 66.)

Plaintiff then requested a hearing before an Administrative Law Judge of the Social Security Administration.[1] The hearing thus requested was held July 8, 1975, in Sedalia, Missouri. Plaintiff and her granddaughter appeared at the hearing and offered their testimony in support of plaintiff's application. Plaintiff was not represented by counsel at the hearing.[2] She testified that she was 52 years of age (Tr. 29); that she was 5'2" tall and weighed 112 pounds (Tr. 20); that she had completed school through the ninth grade and could

2. Absence of counsel in a social security disability hearing is not, without more, a sufficient basis for deeming the hearing to have been unlawful or unfair within the meaning of *Pollard v. Gardner,* 267 F.Supp. 890, 893 (W.D.Mo. 1967). But the absence of counsel places upon the Administrative Law Judge an additional responsibility to gather all the relevant and material evidence which may favor the application for benefits. "The administrative law judge in social security cases is in the peculiar position of acting as an adjudicator while also being charged with developing the facts . . . This is especially true when the claimants appear without counsel." *Landess v. Weinberger,* 490 F.2d 1187, 1189 (8th Cir. 1974).

read and write, but had no vocational training (*Id.*); that, on November 18, 1970, she moved from Ohio to Boonville, Missouri, and there "worked at Bell Fruit Farm . . . bagging apples" (Tr. 30); that, previously, while residing in Cincinnati, Ohio, she worked at the Dolly Madison Bakery doing "bakery work" (Tr. 31) and, before that, had worked "7 years for Kroger" (*Id.*); that, during all this time, she was doing "bakery work," decorating cakes and working "in bread" and working "in buns" (Tr. 32); that the nature of the work required that she be "on her feet all day" (*Id.*); that she was heavier then "and strong as an ox" (*Id.*); that, presently, she is "awful short winded" (Tr. 32) and has difficulty with her "finger joints" and "my ankles and my feet and legs at night [are] so puffed I can't hardly even use them" (Tr. 32–33); that she suffers pain in these extremities (Tr. 33); that, after working at Bell Fruit Farm in Boonville, she worked at McGraw-Edison Company from September 27, 1971, to June 2, 1972 (Tr. 34); that she worked in the capacity of a punch presser (Tr. 35); that this duty entailed moving about from press to press, working seated at some presses and standing at others (Tr. 36) and frequent bending (Tr. 37); that, due to injuries to her fingers and her legs, she left her employment there on June 2, 1972 (Tr. 39); that she then "went back over to Mr. and Mrs. Bell's and worked in the apples" until November 1973 (Tr. 39); that she suffers from "[s]hortness of breath . . . Arthritis and bronchitis" (Tr. 48); that "at night, like I say, my fingers are so swollen and ankles and legs and they thump and ache" (*Id.*); that it is difficult for her to stand and walk, although she "could stand maybe a couple of hours (*Id.*) and walk a block or so (*Id.*); and that her relatives do nearly all the household chores and driving of vehicles which are necessary to the maintenance of her daily life and that of her husband (*Id.*).

Plaintiff's granddaughter, in her testimony, corroborated plaintiff's testimony that "she can't do too much" and that the housework must generally be done by her relatives.

The sparse medical evidence which was produced in the course of the administrative proceedings shows the following:

(1) On November 9 and 10, 1972, plaintiff was examined by John W. Payne, M.D., in Columbia, Missouri. Dr. Payne reported a "history . . . of an injury to the left index finger on 12–19–71 with a laceration over the distal end [thereof] which was repaired and treated by Dr. Winn in Boonville" and "a history of injuring her left leg when she bumped it on a skid at work on 1–21–71 with swelling, pain and discomfort in the left leg since that time." There had been, according to her reports, "no return of sensation since the time of injury" to the index finger and a "very tender spot in the upper third of the left lower leg on the medial aspect [where] she points to a small palpable thickening of the soft tissue" with "swelling to double size of the left leg as compared to the right." Dr. Payne noted "atrophy of the distal tip of the left index finger as compared to the right" and slight swelling on November 9, 1972, of the left calf "measuring 12½ inches" as opposed to 12 inches of the right calf, and slightly more (13 inches) on November 10, 1972. X-rays produced findings "entirely within normal limits" and Dr. Payne therefore concluded that the "swelling of the left lower extremity . . . appears to be venous in nature" for "[t]here is no underlying bone pathology that could be demonstrated." Dr. Payne's conclusions respecting disability were as follows:

"I feel Mrs. Gates has a disability of the left index finger with numbness of the distal tip which appears to be permanent and has shown no return in sensation since the initial injury and I would estimate her partial permanent disability of the left index finger as 35 to 40 percent of the left index finger.

"The minimal swelling demonstrated in the left lower extremity without any enlarged mass underlying bony defect and the minimal amount of swelling demonstrated on return examination I do not feel represents a ratable disability." (Tr. 94–95.)

(2) Plaintiff underwent an "evaluation" in the University of Cincinnati Medical Center from December 27, 1973, to January 12, 1974. In his report of that "evaluation," the examining physician noted that plaintiff complained of "anterior tibial pain" and had suffered a 30-pound weight loss in the past 8 months; that she exhibited "tenderness to the slightest pressure over the anterior blade of both tibia"; that the "[r]emainder of the exam was unrevealing except for equivocal ankle jerks"; and that "we must discharge Mrs. Gates with the diagnosis of anterior tibial pain of unknown etiology." (Tr. 83–84.)

(3) In June 1974, plaintiff was admitted to the Cooper County Memorial Hospital in Boonville with the "signs and symptoms of bronchitis." In his "discharge summary" dated June 6, 1974, B. M. Stuart, M.D., the attending physician, noted that "emphysema was apparent on her chest x-rays"; that she in fact was suffering from acute bronchitis; that "[s]he is to be followed in our office in a few days to see if this infection has completely subsided"; and that the final diagnosis on discharge was as follows:

"1. Acute bronchitis due to mixed bacteria infection including strep, Neisseria and Pneumonocci.

"2. Pulmonary emphysema."

(Tr. 85.)

(4) An "x-ray report," made while plaintiff was being examined in the Cooper County Memorial Hospital on June 3, 1974, indicated the following with respect to her chest:

"The heart, aorta are elongated with calcification in each. The lungs are hyperaerated. The anteroposterior diameter of the chest is increased. There is flattening of the diaphragms and blunting of the castophremic angles. There is no active infiltrative disease. There is kyphocoliosis thoracic spine, hypertrophic lipping, osteoporosis.

"Conclusions: Arteriosclerosis
          Emphysema
          Negative for active infiltrative disease."

(Tr. 87.)

(5) In September 1974, plaintiff was admitted to the Bothwell Memorial Hospital in Sedalia, Missouri, and was diagnosed, by T. S. Hopkins, M.D., on September 17, 1974, as suffering from "minimal emphysema" on the basis of pulmonary function studies. (Tr. 88–9.) It was recommended that she have "vocational rehabilitation." (Tr. 89.) In his written report of September 17, 1974, Dr. Hopkins notes that the "chief complaint of this white female is that of weakness and aching in her knees and joints [and] shortness of breath upon exertion of rather severe degree"; that "[t]hese difficulties began in November 1973, with a flu type illness that she states was pneumonia"; that, "[s]ince that time she has lost approximately 30 pounds of weight [and] has noted very severe shortness of breath upon minimal exertion [and] intermittent swelling in both legs"; that she "does not appear in any acute or chronic distress"; that "[t]here is some decreased excursion of the chest cage, but otherwise [the chest is] negative"; that "there is subjective complaint of pain in the tibiae, but there [are] no physical signs of arthritis"; that x-rays revealed a "negative chest"; and that the "diagnostic impressions" are:

"1. Pulmonary emphysema, moderate degree, showing no severe impairment of function, as evidence[d] by report of chest x-ray, phys[ic]al examination and pulmonary function test.

"2. Essential hypertension, moderate degree, uncomplicated." (Tr. 92–93.)

Dr. Hopkins' conclusion with respect to the issue of plaintiff's disability *vel non* is as follows:

"I am unable to make a diagnosis of disabling disease in this relatively young woman at this time. She certainly complains of being weak and  .  .  . shortness of breath, but I fail to find *objective* evidence to substantiate her alleged disability at this time." (Tr. 93.) (Emphasis added.)

On the basis of this evidence, the Administrative Law Judge issued his written decision on August 9, 1975, denying disability benefits to plaintiff. In his brief "analysis

of the case," the Administrative Law Judge simply mentioned that the Cincinnati General Hospital, in December 1973, was "unable to find the cause of the patient's pain," which was improved by "rest and mild analgesics" and "referred to her emphysema as being of mild degree;" that "[t]he claimant's primary problem according to her seems to be her breathing"; that "[s]he was examined by Dr. P. S. Hopkins who states that she has a moderate degree of pulmonary emphysema and shows no severe impairment of function"; that "[t]here is nothing mentioned as to the swelling by Dr. Hopkins"; and that:

"If the claimant is as bad as she says, she is disabled. Unfortunately, in order to be entitled to disability benefits, she must establish by medical evidence a condition that is consistent with her complaint of her limitations. This she has failed to do. The medical reports in the file fail to establish that the claimant is unable to work, and therefore, she is not entitled to disability insurance benefits." (Tr. 12–13.)

Plaintiff then appealed the decision of the Administrative Law Judge to the Appeals Council of the Social Security Administration. In support of her appeal, she submitted two additional medical reports, which can be summarized as follows:

(1) Under the date of October 15, 1975, F. D. Dean, M.D. rendered the following written statement:

"Mrs. Gates is under our care at the present time, and has been found to be total[l]y disabled, physically for any type of work." (Tr. 96.)

(2) Under the date of September 26, 1975, William D. Gaunt, M.D., Associate Professor of Medicine, University of Missouri-Columbia, and Donna M. Winn, M.D., resident physician, rendered a written report based on a recent examination of the plaintiff. They noted that plaintiff "relates that she has a long history of musculoskeletal pain dating back to 5 or 6 years ago when she was hospitalized for

evaluation of anterior tibial pain on the right that was evaluated at Cincinnati General Hospital and noted to be pereostitis"; that "[o]ver the course of the last few months she has noted the onset of pain in both of the tibial shells with swelling of the left knee but no erythema or warmth noted"; that "[s]he also noted the onset of a 'bump' located over the triceps area of the left forearm for which she has received numerous injections over the course of the past few months from Dr. Dean with mild relief of the pain but no change in the area"; that "[s]he does admit to dyspnea which has been occurring over the course of the last year to a point that precludes her performing her normal daily activities"; that "[s]he worked very hard most of her life as a baker in a bakery and over the course of the last year she has been unable even to maintain her house because of the dyspnea that she develops when running the vacuum cleaner"; that "[t]he extremities showed palmar erythema of both of the hands [and] scattered swelling of the MCP joint in the second and third fingers of the right hand and the fourth finger of the left hand"; that "[t]here was swelling of the DIP joint of the fourth finger of the left hand, as well as the second and third fingers of the right hand"; that "[t]he knees were symmetrical with an increase in the prominence of the head of the tibia, but no other abnormalities"; and that the "Impression" was as follows:

"1. Musculoskeletal pain, etiology unclear, but MCTD, SLE, and polymyositis must be considered.

"2. Dyspnea on exertion of unknown etiology questionably secondary to # 1.

"3. Tinea versicolor.

"4. Status post tubal ligation and appendectomy."

The report notes that further, more extensive x-rays and studies were to be undertaken in October 1975 so that a diagnosis could be made.[3]

3. The administrative record shows that, although these results were inquired into by Dr. Dean in his letter of October 15, 1975, to the

University of Missouri hospital, they were not added to the administrative record.

The Appeals Council nevertheless disregarded the additional evidence submitted (apparently because the medical reports were dated long after September 30, 1974, the last date on which plaintiff could suffer the onset of a disability which would be compensable under the Social Security Act) and affirmed the decision of the Administrative Law Judge without any further opinion.[4] In so doing, the Appeals Council noted that "the hearing decision stands as the final decision of the Secretary," (Tr. 3) reviewable by this court under the provisions of § 405(g), *supra*. That section pertinently provides that:

"The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . The court . . . may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or

its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based."

In determining whether the Secretary's decision is supported by substantial evidence, the court is not to view portions of the record which may support the Secretary's decision in isolation from those which do not.[5] It must be determined whether there is a rational justification for the decision of the Secretary.[6] On the basis of the administrative record which has been submitted to the court, this cannot presently be done. It is clear from the foregoing summary of the evidence which was presented in the administrative proceedings that the testimony of plaintiff and her granddaughter, if true, presented a strong case of plaintiff's disability since November 1973. "Of course, this by itself is not enough; there must be medical corroboration of . . . disability." *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974). And, further, findings in some of the medical opinions would tend to support plaintiff's claim of disability.[7] But this evidence is incom-

---

**4.** This apparently meant that the Appeals Council did not deem the evidence which had been submitted to it subsequent to the decision of the Administrative Law Judge to be relevant or material to the issue of whether plaintiff had an onset of disability before September 30, 1974, which lasted 12 consecutive months or more.

**5.** "In determining whether there is substantial evidence to support the [administrative] finding a reviewing court must consider both evidence that supports, and evidence that detracts from, the examiner's conclusion." *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). It would be improper "[to] affirm the . . . examiner's conclusion simply by isolating a specific quantum of supporting evidence." *Id.*

**6.** The facts which may constitute evidence must be such that a reasonable mind would accept them as adequate to support a conclusion. See *Yawitz v. Weinberger*, 498 F.2d 956 (8th Cir. 1974).

**7.** Plaintiff's pain, for instance, was confirmed as early as December 27, 1973, by the Universi-

ty of Cincinnati Medical Center when it was noted that she exhibited "tenderness to the slightest pressure over the anterior blade of both tibia." (Tr. 83.) This application of pressure constitutes a proper clinical diagnostic technique within the meaning of Section 423(d)(3), Title 42, United States Code, which requires that a physical or mental impairment result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." In September of 1974, it was noted that her complaints of pain continued; that they were purely "subjective" and that there were no "physical signs of arthritis." It is not stated whether the last conclusion is supported by anything except observation of the external characteristics of the plaintiff. Nor is the degree of pain noted. (Tr. 92–93.) In September of 1974, she was still having the pain. (Tr. 98.) But, again, its degree, intensity, and limitation with function are not evidenced by the medical reports. The same is true with respect to plaintiff's other

plete and sketchy with respect to the severity of plaintiff's symptoms, the degree of their interference with her functioning, the date of their onset in such severity as may have precluded her engaging in substantial gainful activity, and how long such severity may have continued.[8] In order to constitute substantial evidence in support of a finding of disability the conclusions of a medical expert must be supported by findings of clinical or laboratory significance which tend to show the claimant's inability to engage in substantial gainful activity by reason of a medically determinable physcial or mental impairment which has lasted or can be expected to last for a period of 12 months or more. It appears, however, that the information which is necessary to make those findings may be "readily obtainable," within the meaning of *Hess v. Secretary of Health, Education, and Welfare,* 497 F.2d 837 (3d Cir. 1974).[9] See also and compare *Heisner v. Secretary of Health, Education, and Welfare,* 538 F.2d 1329, 1332 (8th Cir. 1976). Therefore, a remand is in order to grant plaintiff and the physicians whose conclusions support her claim of disability an opportunity to supply the necessary— and possibly "readily obtainable"—clinical or laboratory findings. In this action, as in *Landess v. Weinberger, supra,* at 1189, "the evidence *gathered* by the examiner from . . . physicians does not in any way

develop the extent of . . . disability . . . . Claimant should be entitled to have the views of . . . treating physicians more fully developed."

Remand is also appropriate because of the failure of the Administrative Law Judge to consider the cumulative effect of all of plaintiff's several afflictions rather than their respective separate effects, each in isolation of the other. See *Landess v. Weinberger, supra; Haskins v. Finch,* 307 F.Supp. 1272 (W.D.Mo.1969). The medical reports which have been submitted in the course of the administrative proceedings tend to show that, at sometime prior to September 30, 1974, plaintiff commenced to suffer from an injury to her left index finger, injury to her legs, pain of unknown cause and origin, swelling of her calves and ankles, a significant weight loss in the proximity of 30 pounds, acute bronchitis, emphysema of uncertain severity, some spinal changes, arteriosclerosis, dyspnea, and hypertension. In evaluating the evidence, however, the Administrative Law Judge considered only three of her symptoms— emphysema, dyspnea, and pain—and considers them in isolation of one another.[10] This is an error of some gravity, as is evidenced by our court of appeals' language in *Landess v. Weinberger, supra,* at 1190, to the following effect:

ailments; they are mentioned in the medical reports, but little or nothing is stated respecting their degree, intensity, limitation with function, and duration. Yet, because the maladies have been diagnosed by physicians, it follows that the evidence for these diagnoses must exist and thus be "readily obtainable" within the meaning of *Hess v. Secretary of Health, Education, and Welfare,* 497 F.2d 837 (3d Cir. 1974). See note 9, *infra.* It is the duty of the Administrative Law Judge to elicit these facts in conducting a fair and lawful hearing. See note 2 *supra.* See also *Landess v. Weinberger, supra* note 2, at 1189, to the following effect:

"Although the law recognizes that written medical reports are admissible in a social security hearing and may be the sole basis for substantial evidence to support a social security determination agency adjudicators and courts cannot ignore their inadequacies. Experience within our adversary trial system has long demonstrated that naked conclusions and opinions by medical experts are

often subject to reserved and unwritten qualifications requiring searching evaluation."

8. See note 7, *supra.*

9. "Since readily obtainable information was *not secured so as to resolve doubts about this* unrepresented claimant's right to disability benefits, we believe that he did not receive the full hearing to which he was entitled." *Hess v. Secretary of Health, Education, and Welfare,* 497 F.2d 837, 841 (3d Cir. 1974). See also *Landess v. Weinberger, supra* at note 2, at 1189: "Here the evidence *gathered* by the examiner from her physicians *does not in any* way develop the extent of her disability." (Emphasis in original.) See note 7, *supra.*

10. *See page 1034, supra.* His seriatim consideration of the several severities precludes any conclusion that he made any assessment of the cumulative effect of these impairments upon the plaintiff.

"In evaluating whether a claimant is capable of engaging in any gainful activity it is essential that the Secretary view the individual as a whole. It is senseless to view several disabilities as isolated from one another as the medical advisers did here. Each illness standing alone, measured in the abstract, may not be disabling. But disability claimants are not to be evaluated as having several hypothetical and isolated illnesses. These claimants are real people and entitled to have their disabilities measured in terms of their total physiological well-being."

See also the prior decision of this court in *Haskins v. Finch, supra,* at 1279, to the following effect:

"The criteria to be followed in determining a claimant's ability or inability to engage in substantial gainful activity are objective medical facts, diagnoses and expert medical opinions on subsidiary questions of fact, credible subjective evidence of pain and disability testified to by claimant and claimant's educational background. *Sayers v. Gardner, supra* (C.A.6) 380 F.2d 940. 'All complaints must be considered together in determining her work capacity.' *Burns v. Celebrezze* (W.D.N.C.) 234 F.Supp. 1019."

In respect to the action at bar, in which, as noted above, there is an absence of evidence on the times when plaintiff's several afflic-

tions simultaneously affected her,[11] the error provides a separate ground for remand for further evidence and findings.

There is a third reason that remand of this action is necessary. Plaintiff, in the course of the administrative hearing, testified to the regular and debilitating pain which she was experiencing.[12] Further, some clinical support for these subjective complaints appears from the medical evidence of record.[13] "Pain, in itself, may be a disabling condition." *Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1973). "Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof." *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir. 1971).[14] But, in his evaluation of the evidence, the Administrative Law Judge takes no account of plaintiff's pain. He declines to consider all the evidence of record on this issue [15] or to make any assessment of the severity of plaintiff's pain.[16] Therefore, remand is necessary to enable the Administrative Law Judge to make his finding on this material issue of fact.[17]

Further, remand is necessary in order to grant the Secretary an opportunity to apply

11. See note 7, *supra.*

12. See page 1033, of text of this memorandum, *supra.*

13. See note 7, *supra.*

14. There are three medical reports in the administrative record which are devoted, in whole or part, to the issue of plaintiff's complaints of pain. The Administrative Law Judge considered only one of these—the report of the University of Cincinnati Medical Center—in making his "analysis of the case." (Tr. 12.) Further, he does not attempt to make any assessment of the severity of plaintiff's pain, nor does he make any finding whether plaintiff's subjective complaints of disabling pain are credible *vel non.* This error, without more, makes the action remandable. See e. g., *Chester v. Mathews,* 403 F.Supp. 110, 114 (D.Md. 1975), to the following effect:

"[T]he Secretary must explicitly consider the claimant's subjective symptoms, *DePaepe v.*

*Richardson,* 464 F.2d 92, 99 (5th Cir. 1972), . . . While the Secretary has a right to reject such subjective evidence, *Reyes Robles v. Finch,* 409 F.2d 84, 87 (1st Cir. 1969), the failure to do so explicitly leads to the conclusion that such evidence has not been considered at all."

15. See note 14, *supra.*

16. Although it is not necessary that the clinical or laboratory findings be "objective," it is necessary that a medical opinion, in order to warrant a finding of disability, demonstrate that the physical or mental impairment results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques. See *Cutler v. Weinberger,* 516 F.2d 1282 (2d Cir. 1975). See note 3, *supra.*

17. See note 14, *supra.*

a correct legal standard with respect to the degree to which a claimant's subjective complaints must be corroborated by clinical and laboratory findings.[18] The Administrative Law Judge, in his evaluation of the evidence, indicates that plaintiff's claim in this regard may be denied principally because the findings of Dr. Hopkins and Cincinnati General Hospital do not support her subjective complaints. But those reports simply conclude that plaintiff's complaints are not supported by *objective* medical evidence. But it is incorrect to require that *objective medical evidence* support a disability claimant's subjective complaints.[19] Remand is therefore necessary to require the application of correct legal standards in this regard by the Secretary.

Remand is also compelled by the apparent failure of the Appeals Council of the Social Security Administration to consider the medical evidence offered to it on appeal from the Administrative Law Judge's decision.[20] Although this evidence consists of medical reports based on examinations made long after September 30, 1974, they provide evidence of impairments which commenced before that date and they also provide some guide to the degree of increasing severity of these impairments.[21]

Finally, it should be borne in mind that, if a disability claimant makes a showing of his or her inability to return to his or her former type of work by reason of his impairments, that shifts to the Secretary the burden "of coming forward . . . with proof that there are substantial job opportunities in the national economy." *Meneses v. Secretary of Health, Education and Welfare,* 143 U.S.App.D.C. 81, 442 F.2d 803, 807 (1971); *Johnson v. Richardson,* 486 F.2d 1023 (8th Cir. 1973). Therefore, on remand, vocational expert testimony on this subject will be necessary.

It is therefore

ORDERED that defendant's motion for summary judgment be, and it is hereby denied. It is further

ORDERED that plaintiff's cross-motion for summary judgment be, and it is hereby, denied. It is further

ORDERED that this cause be, and it is hereby, remanded to the Secretary of Health, Education and Welfare for the taking of additional evidence and the making of additional findings of fact in accordance with the foregoing considerations.

---

18. See note 16, *supra.*

19. See note 16, *supra.* See also *Haskins v. Finch,* 307 F.Supp. 1272.

20. The Agency's rules permit the offering of additional evidence to the Appeals Council. In its letter of October 8, 1975, to the plaintiff, the Appeals Council instructed that she should send "additional information . . : directly to the Appeals Council within 20 days from the date of this letter." (Tr. 6.) By letter of November 14, 1975, the time was extended for another 20 days. (Tr. 5.)

21. "It is true that regardless of how severe an impairment becomes at a subsequent time, one is not entitled to a disability unless the impairment were disabling prior to the expiration of one's insured status. But it by no means follows from this that evidence bearing upon plaintiff's subsequent condition is necessarily irrelevant to the question of the existence of a prior disability. Numerous courts have held that such evidence is pertinent . . ." *Selig v. Richardson,* 379 F.Supp. 594, 599 (E.D.N.Y. 1974). Such evidence may "disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date." *Carnevale v. Gardner,* 393 F.2d 889, 890 (2d Cir. 1968). Thus, the report of Dr. Dean of October 15, 1975, may on remand, be shown to be supported by evidence of a longstanding, continually-suffered, disabling impairment. And the report of the University of Missouri, under date of September 26, 1975, explicitly purports to relate to plaintiff's "long history of musculoskeletal pain dating back to 5 or 6 years ago." (Tr. 98.)