Bennie E. **STRICKLAND**, Plaintiff,

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

**No. FS–76–86–C.**

United States District Court, W. D. Arkansas, Fort Smith Division.

March 22, 1978.

---

Stephen M. Sharum, Fort Smith, Ark., for plaintiff.

Larry R. McCord, U. S. Atty., Fort Smith, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge.

On January 2, 1974, plaintiff, Bennie E. Strickland, filed application for disability insurance benefits in which he alleged his disability as "back injuries and nerve damage from a myelogram done five years ago, effecting legs and hands". (Tr. 72–75). The application was initially denied on February 7, 1974. (Tr. 76–77). Reconsideration was denied on May 15, 1974 on the ground that the plaintiff was not under a disability.

Hearing was held in Mena, Arkansas, by Gene C. Smith, Administrative Law Judge, on August 6, 1975, who on October 10, 1975 held that plaintiff is not entitled to the establishment of a period of disability or to disability insurance benefits on the ground that plaintiff's physical impairments consisting of residuals of vertebral fracture are not of a level of severity as to preclude him from engaging in any substantial gainful activity. He further held that plaintiff "is unable to return to his previous heavy work as a construction worker, but he is and has been able to function normally otherwise."

On January 9, 1976, the Appeals Council approved the Administrative Law Judge's decision and May 14, 1976 the plaintiff filed his complaint, in which he alleged:

"The evidence produced at the administrative hearing before the hearing examiner, Judge G. C. Smith, and the Appeals Council showed without substantial contradiction that plaintiff was severely and irremediably disabled by accidental injuries, and that such disability rendered him unable to engage in any substantial gainful activity, within the meaning of the Social Security Act. The finding of the Secretary to the contrary lacks any substantial support in the evidence."

An answer of defendant to the complaint was filed September 15, 1976 and on September 24, 1976, Chief Judge, Paul X Williams, entered an order remanding the case to the Secretary "for a new hearing before an Administrative Law Judge at which plaintiff may present new and additional factual and medical evidence."

On December 14, 1976, a supplemental hearing was held at Fort Smith, Arkansas, by Denton D. Gossett, Administrative Law Judge, who filed his opinion on February 18, 1977, in which he held:

"Mr. Strickland has not been unable for 12 continuous months to perform the jobs related by the vocational expert with the exception of porter. This job would probably require an excessive amount of bending and stooping."

In discussion of the claim, the judge stated:

"Mr. Strickland asserts constant pain over all his body which at times becomes so bad, he can 'hardly stand it'. Although pain may be severe enough to result in an inability to engage in substantial gainful activity, (see *Ber v. Celebrezze*, 2nd Cir., 332 F.2d 293), it is equally clear that Mr. Strickland must establish the existence of severity of pain by more than mere allegations. (Social Security Act, section 223(d)(3), *Dvorak v. Celebrezze*, 345 F.2d 894 (10 Cir. 1965).

"It is well settled that 'subjective symptoms must be evaluated with due consideration for credibility, motivation and medical evidence of impairment'. *Dvorak v. Celebrezze, supra* at 894, Social Security Act, sections 216(i)(1)(A) and 223(C)(2). Dr. McConkie and Dr. Beard were of the definite opinion that Mr. Strickland's numerous complaints were 'far in excess of what the objective findings can correlate with.'

"*Cantrell v. Ribicoff*, 206 F.Supp. 436, 438, the Federal Court quoted the following language with apparent approval:

"'Pain is a subjective symptom which cannot be measured qualitatively or quantitatively. However, continuous, severe and intractable pain must, and

does leave its stigmata. In longstanding cases of severe and persistent back pain, there is usually present not only loss of motion in the back but such signs as impaired gait and weakness of the extremities with resultant muscular atrophy caused by the voluntary or involuntary restriction in the use of the back, weight loss, and progressive physical deterioration.'

"Such compatible, observable signs consistent with severe and intractable pain have not been evidenced in the instant case." (Tr. 122–123).

On May 17, 1977, the Appeals Council adopted said decision and found that the plaintiff was not entitled to a period of disability. The decision of the Appeals Council became the final decision of the Secretary.

On March 14, 1978, the Secretary filed his motion for summary judgment, supported by brief, on the ground that there is no issue of fact and the defendant is entitled to a judgment as a matter of law. On March 15, 1978, plaintiff filed his motion for summary judgment, supported by brief, on the ground that there is no issue of fact and plaintiff is entitled to a judgment as a matter of law.

It is undisputed that in 1965 plaintiff was involved in an automobile accident in which he received severe injuries to his right side, including the arm, shoulder, hip and leg. A myelogram was performed evidencing a lesion on his spine. Surgery was recommended but declined by plaintiff. The medical reports substantiated that the plaintiff's lesion was aggravated by the possible improper insertion of a needle during the myelogram x-ray examination. (Tr. 97).

The neurosurgeon later committed suicide.

To complicate matters, the plaintiff, in 1969, while working fell off of a ladder causing a compression fracture of the L–1 vertebrae. (Tr. 97).

On July 4, 1973, a third injury occurred when the plaintiff stepped off of a truck and in the fall, struck his back and tail bone on a blunt leg of a compressor causing severe pain and aggravation of pre-existing injuries. (Tr. 41 and 53).

Occasionally, plaintiff wears a brace which gives only partial relief from the injuries suffered by him. That he has continuous severe pain localized in his back lumbar region and entire right side of his body is admitted by all physicians, but it is contended that it is not sufficient to disable him.

Dr. Alfred B. Hathcock, of the Holt-Krock Clinic of Fort Smith, Arkansas, on February 1, 1974, writing on behalf of the Orthopaedic-Neurological Professional Associates, advised Wayne G. Loftin, Director of Disability Determination of the Social Security Administration, as follows:

"This man conceivably could have been injured in the first automobile accident and had symptoms that have persisted ever since. The first myelogram showed the possibility of a surgically correctable problem, but unfortunately his original investigator is dead. He does have x-ray evidence of a compression fracture, and conceivably he had nerve root irritation in the past. I would say that the second injury definitely aggravated the first, but my guess is that he was mostly disabled from the first injury. The second injury did add enough to it that he had trouble doing the work he was doing. I would agree that heavy lifting, or stooping, or bending would be difficult for him. The obvious next step is to consider a myelogram in other words further work-up." (Tr. 98).

Dr. Hathcock did not mention the fall of plaintiff on July 4, 1973 which caused severe pain and aggravated the prior injuries of 1965 and 1969.

In the opinion of the Administrative Law Judge, Gossett, of February 18, 1977, he evaluated the statements of the physicians as follows:

"Dr. Beard's impression was:

" 'The overwhelming pervasive impression of the whole exam is that there are numerous complaints far in excess

of what the objective findings can correlate with.

" 'Because of the old compression fracture as previously reported, I am inclined to believe he should avoid heavy lifting at any time. I am inclined to believe that he can do a full range of sedentary, light and medium work.'

"The record further shows that the well-qualified, board certified orthopedist, Dr. Hathcock, in February, 1974, found a post-compression fracture of L–1 with intermittent nerve root irritation. Dr. Hathcock stated that heavy lifting or stooping or bending would be difficult.

"Another well-qualified, board certified orthopedist, Dr. McConkie in April, 1975, found:

" 'In summary, Mr. Strickland presents with many more complaints than can be justified on the basis of this physical examination with the exception of a little bit of stiffness in the low back estimated at 25 to 30%. I would not feel that there is anything that would significantly point to a back injury or difficulty of any type. He has no neurologic changes and I believe his complaints as far as the leg giving way, the numbness, the pain and the groaning and moaning are all grossly overstated.

" 'The only significant finding then is a loss of about 25% back motion which is felt to be valid and an old lumbar fracture which is well healed. This gentleman should be able to perform well at jobs that are commensurate with his age. Heavy lifting and straining and getting in awkward positions would be troublesome and should be avoided.'

"In short, two board certified orthopedists and a board certified neurologist are of the opinion that Mr. Strickland is only limited as to work activity which involves heavy lifting. The board certified orthopedist in 1974 thought that stooping and bending would be difficult. Mr. McConkie and Dr. Beard found loss of motion in the back. This would preclude the performance of jobs which require repetitive bending or repetitive stooping.

"As set forth hereinabove, Dr. Pickard in his report of December 3, 1976, related no new findings. He merely stated that Mr. Strickland's 'condition *appears* to be unchanged' (Emphasis added).

"In his report of August 5, 1975, (Exhibit 19) the only medically determinable findings reported by Dr. Pickard were that x-rays showed 'an anterior wedge deformity of L–1'. Dr. Pickard stated that the vertebrae body heights and intervertebral disc spaces were 'maintained'. Dr. Pickard related complaints by Mr. Strickland involving the right arm and leg, but he set forth no findings involving these extremities. Dr. Pickard stated that in his opinion, Mr. Strickland had 'traumatic degenerative acute exacerbation and right sided sciatic neuritis'. Dr. Pickard did not state the degree of functional loss Mr. Strickland had and his report does not indicate a marked degree of functional loss. Except for L–1, x-rays showed that the spine was essentially normal. The wedge deformity at L–1 (Drs. Hathcock and McConkie described it as an old compression fracture.) would preclude arduous labor or bending or repetitive stooping." (Tr. 120–121).

At the first hearing before Administrative Law Judge, Smith, the claimant, Mr. Strickland, and his wife, Mrs. Barbara Strickland, testified rather fully as to the various injuries that had been received by claimant which prevented him from pursuing his usual work and caused extreme suffering. Also, at the first hearing, Mr. Paul Lane was called as a witness by the Judge and he testified as an expert from an exhibit dated March, 1974, which purported to state the experience and background of Mr. Lane. The exhibit reflects that he was first employed by the Oklahoma Employment Security Commission as an interviewer and test technician. Prior to such employment, he listed his other employment from August, 1953 to June 1, 1972 as follows:

1. Supervision of General Motors Accounts in five county area. Both retail and wholesale.

2. Manager McAlester Ready-Mixed Concrete.

3. Bureau of Census.
4. Insurance Salesman.

He listed his education as studying in Northeast Missouri State University with the major subject Industrial Arts. He also stated that he studied insurance marketing in Louisiana State University and at present he was engaged as a consultant for Oklahoma Aerotronics to prescreen tests to determine employment aptitude of employees prior to their engagement. The sum and substance of his twelve pages of testimony is that in his opinion, Mr. Strickland was physically able to perform work in other available jobs.

At the second hearing, Mr. and Mrs. Strickland again testified substantially as in the first hearing relative to his injuries. In addition, Mr. P. W. Nolan, a brother-in-law of claimant, testified that he was well acquainted with applicant and that he was unable to work.

Question: "What is his daily routine? Can you tell us basically what he does during the day?

Answer: Well, not much of anything really.

Question: Have you traveled with him?

Answer: Some.

Question: Okay. Is it necessary for him to have to stop periodically and exercise or—

Answer: Yes, sir. He moves about up and down, you know, from time to time.

Question: Okay. Is it ever necessary that he has to lay down or recline?

Answer: Yeah, I have, I have seen him do that.

Question: Okay. In your opinion do you know of anything that he could do as far as work goes?

Answer: No, I really don't.

Question: What do you do?

Answer: Well, I'm retired, but I also do radiator work.

Question: Okay, has he ever helped you do any of that?

Answer: No, sir, he's not able. Or I'd have something for him to do." (Tr. 160–161).

Mrs. Lillie B. Nolan, a sister of applicant testified to the same effect as that of her husband.

The real contention of the Secretary is disclosed by the above statements of the Administrative Law Judge, Gossett. In other words, the defendant, in effect, contends that the plaintiff is a malignant, one that is rebellious, disaffected or malcontent and that he has not been prevented from engaging in all substantial gainful activity for any continuous period beginning on or before the date of this decision (2–13–77) which has lasted or can be expected to last for at least twelve months.

In *Sayers v. Gardner* (6th Cir. 1967) 380 F.2d 940, the court, beginning at the bottom of page 948, said:

"If a person is unable except under great pain to engage in any substantial gainful activity in which he might be employable, taking into consideration his age, training, work experience and physical and mental capacities, he is deemed disabled for purposes of the Social Security Act. *Smith v. Celebrezze*, 229 F.Supp. 827 (D.C.N.C.). Even pain unaccompanied by any objectively observable symptoms, which is nevertheless real to the sufferer and so intense as to be disabling, will support a claim for disability benefits. *Ber v. Celebrezze*, 332 F.2d 293 (C.A.2). The fact that there is such a subjective symptom as pain of claimant for social security benefits does not mean that it ranks as a lesser type of disability. *Blanscet v. Ribicoff*, 201 F.Supp. 257 (D.C. Ark.). The notion that pain must be endured, that pain, no matter how severe or overpowering, is not disabling unless it will substantially aggravate a condition, is contrary to law under disability provisions of the Social Security Act which were intended to ameliorate some of the rigors that life imposes. *Page v. Celebrezze*, 311 F.2d 757 (C.A.5). The criteria to be considered in determining a claimant's ability or inability to engage in substantial gainful activity, for purposes of determining his right to social security

disability benefits, are objective medical facts, diagnoses, and expert medical opinions on subsidiary questions of fact, subjective evidence of pain and disability testified to by claimant, and claimant's educational background, work history and present age. *Helton v. Celebrezze*, 220 F.Supp. 759 (W.D.N.C.); affirmed 331 F.2d 342 (C.A.4)."

Beginning at 380 F.2d page 949, the court further said:

"The second reversible error committed by the Hearing Examiner was his holding that the impairment must be medically determinable and in order to be medically determinable, 'the existence of the impairment must be established by objective medical, clinical, or laboratory evidence.' The Hearing Examiner stated further, that pain is only a subjective symptom that cannot be accurately measured, and, in itself, is not disabling; and he concluded his decision in holding that appellant could not be disabled through pain alone by stating: 'The Hearing Examiner finds that there is no objective medical evidence to support a conclusion that the claimant is suffering pain sufficient to make her disabled within the meaning of the Act.'

"The holding by the Hearing Examiner that 'medically determinable' means 'supported by objective clinical or laboratory evidence' is clearly erroneous.

"In *Ross v. Gardner, Secretary*, 365 F.2d 554 (C.A.6), in reversing a judgment in favor of the Secretary, this court said: 'Obviously, the Hearing Examiner in this case, as in other cases coming to our attention, assumed that "medically determinable" means "supported by objective clinical findings and reports." The Act means nothing of the kind.'"

The court, in quoting from *Gardner v. Smith*, (5th Cir.) 368 F.2d 77, 84, said:

"If a physical or mental impairment prevents one from obtaining a job, or from even being considered for the job, he is just as unable to engage in that activity as he would be were he unable to perform the work after he had obtained the em-

ployment. The ability to perform work existing in the appropriate labor market requires a determination of whether the claimant would be considered for employment if a job vacancy occurred. If, in practice, the claimant could not reasonably expect to be hired, then no job exists for him. The Act asks if the claimant is able to engage in substantial gainful work. If no one would hire him, he cannot engage in substantial gainful work. Extended to its broadest reaches, the Secretary's position would nullify the purpose of the Act, for, unless the claimant is bedridden and incapable of any movement, there most probably is some work he physically could do, though there might be no likelihood that he could successfully compete for the job.

.    .    .    .    . .

"It would be wholly unrealistic to hold that though no employer would hire a person because of his physical or mental impairment, the person is still not disabled because he could do certain tasks or duties connected with jobs existing within the labor market. In such a situation there really exists an inability to engage in substantial gainful activity by reason of impairment, when but for the impairment, the person could compete for a job."

The court further said:

"We conclude that the Secretary failed to employ the proper legal standards in making his determination of the claimant's disability. There should have been a determination by the Secretary of whether or not the claimant's physical or mental impairment would prevent him from being hired to fill jobs, if such jobs were open in the area in which the claimant could reasonably be expected to compete. If the hiring practices and policies of employers will not permit the employment of a man, who because of an impairment could not 'carry his load,' then he must be considered disabled." (Emphasis supplied.)"

*Sayers v. Gardner* has been cited with approval in numerous district courts and

many circuit courts of appeal (see list of cases in Shepard's Federal Citations, Supplement 1969–1977).

In *Hughes v. Richardson*, (W.D.Mo.1971) 342 F.Supp. 320, where the court in syllabus 2 said:

"Social Security and Public Welfare.

"Requiring applicant for disability benefits under Social Security Act to prove that her disability was severe enough to preclude her from 'all gainful activity' placed on applicant a burden of proving greater severity of disability than that required by statute, which requires inability to perform 'any substantial gainful activity' and denial of benefits for failure of applicant to meet burden imposed was improper. Social Security Act, §§ 216(i), 223, 42 U.S.C.A. §§ 416(i), 423."

See also *Haskins v. Finch*, (W.D.Mo.1969) 307 F.Supp. 1272, 1279, and *Gates v. Califano*, (W.D.Mo.1977) 433 F.Supp. 1031. *Johnson v. Califano*, 8th Cir., 572 F.2d 186, Slip Opinion, 3–15–78.

█ The action of the Appeals Council in approving the opinions of the two Administrative Law Judges became a final judgment and a judiciary review of the findings of fact of the Secretary is limited to a determination of whether the findings of fact and reasonable inferences drawn from the mare supported by substantial evidence.

In *McCalip v. Richardson*, (8th Cir. 1972) 460 F.2d 1124, the court, beginning at the bottom of page 1125, said:

"Concededly, the Secretary's findings of fact and the reasonable inferences drawn therefrom are conclusive and binding if supported by substantial evidence. *Celebrezze v. Bolas*, 8th Cir., 1963, 316 F.2d 498, 500. See also, e. g., *Vineyard v. Gardner*, 8th Cir. 1967, 376 F.2d 1012, 1014; *Brasher v. Celebrezze*, 8th Cir. 1965, 340 F.2d 413, 414.

"The Supreme Court, in a recent Social Security case, *Richardson v. Perales*, 1971, 402 U.S. 389 at page 401, 91 S.Ct. 1420, at page 1427, 28 L.Ed.2d 842, reiterated its definition of 'substantial evidence':

' * * * [substantial evidence is] more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126, 140 (1938)."

A reading of the opinions of both of the Administrative Law Judges reveals that they, in effect, disregarded entirely the intense pain that is suffered daily by the plaintiff. Judge Gossett seems to rely upon the testimony of his so-called expert, Paul Lane. The court has set forth the qualifications claimed by Mr. Lane and, in the opinion of the court, his statements amount to nothing more than the statement of some outside volunteer and should be disregarded entirely. This case is simply one of the many cases referred to by the court in *Sayers v. Gardner, supra,* 380 F.2d at page 942, where the court quoted from *Mabry v. Travelers Insurance Company*, (5th Cir. 1952) 193 F.2d 497, 498, as follows:

"Pinched by poverty, beset by adversity, driven by necessity, one may work to keep the wolf away from the door though not physically able to work; and, under the law in this case, the fact that the woman worked to earn a living did not prevent a jury from finding, from the evidence before it that she was totally and permanently disabled even while working."

The court also quoted from *Lightcap v. Celebrezze*, (D.C.Pa.1962) 214 F.Supp. 209, 216:

"In considering a claim for disability benefits, the court said that, as adjured by the Supreme Court, 'courts must now assume more responsibility for the reasonableness and fairness' of the decision of the federal agency 'than some courts have shown in the past' and 'Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function'."

Both of the Administrative Law Judges and the Appeals Council followed the rule announced in *Theberge v. United States*, 87 F.2d 697, 698, 2nd Cir. 1937, by Judge Learned Hand but in *Sayers v. Gardner, supra*, the court at 380 F.2d page 947 said:

"This rule has been specifically discredited, in these disability cases, by this court on so many occasions that it would appear that the Hearing Examiners are resolved to decide these cases, involving pain, on grounds directly contrary to the decisions of this court and the many other adjudications of the federal courts in these disability cases."

A reading of the record convinces the court that the plaintiff is totally and permanently disabled within the meaning of the Social Security Act and there is no reason to remand the case for the taking of further testimony. Plaintiff has since the filing of his claim spent many years suffering, not only physically but financially, simply because he was unable to earn a living because of the established and admitted disability and undisputed intense pain.

Therefore, the orders of the Appeals Council dismissing the claim of the plaintiff are not supported by substantial evidence and judgment should be entered granting the motion of plaintiff, Bennie E. Strickland, for summary judgment and dismissing and overruling motion of defendant for summary judgment and reversing and remanding the case to the Secretary of Health, Education and Welfare with directions to grant plaintiff the claimed disability benefits.